UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, Not in Its Individual Capacity, but Solely as Owner Trustee of BRAVO RESIDENTIAL FUNDING TRUST 2021-C,<br><br>　　　　Plaintiff<br><br>v.<br><br>MARGARET L. GAUTHIER,<br><br>　　　　Defendant | No. 2:23-cv-00380-JAW |

**RECOMMENDED DECISION ON MOTION TO APPOINT RECEIVER**[1]

The Plaintiff—U.S. Bank Trust National Association, not in its individual capacity, but solely as owner trustee of BRAVO Residential Funding Trust 2021-C ("BRAVO")—moves to appoint Benjamin P. Campo, Jr., Esq. as receiver for the property at 14-16 Melvin Avenue in Old Orchard Beach, Maine (the "Property") that is the subject of this foreclosure action.  *See* Motion (ECF No. 12).  The Defendant Margaret L. Gauthier, proceeding *pro se*, opposes the motion.  *See* Opposition (ECF No. 13).  For the reasons that follow, I recommend that the motion be granted.

---

[1] A motion for the appointment of a receiver is "properly deemed 'dispositive'" because it "seeks to have a court undertake an action that could have a significant impact on a party's ability to manage and control its property during the course of litigation."  *ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*, 951 F.3d 41, 48 (1st Cir. 2020).

1

## I. Legal Standard

"This Court has inherent equitable power to appoint a receiver to manage or preserve property pending judgment," *U.S. Bank Nat'l Ass'n v. SRA Augusta SPE, LLC*, No. 1:16-cv-00410-JDL, 2016 WL 6808132, at *4 (D. Me. Nov. 17, 2016), and "the decision to appoint a receiver . . . lies within the discretion of the court," *Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326 (1st Cir. 1988).[2] Factors typically considered in determining whether to appoint a receiver include "fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to [the] plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, [the] plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." 12 Richard L. Marcus, *Federal Practice and Procedure* § 2983, Westlaw (database updated Apr. 2023) (cleaned up).

## II. Background

Gauthier purchased the Property on June 17, 2004. Complaint (ECF No. 1) ¶ 28. On June 2, 2006, she executed and delivered a note in the amount of $269,000 (the "Note") to Residential Mortgage Services, Inc., and a mortgage deed securing the note to Mortgage Electronic Systems, Inc. (MERS) as nominee for Residential Mortgage.

---

[2] Rule 66 of the Federal Rules of Civil Procedure governs actions in which receivers are appointed, but it provides little guidance, merely stating that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule," and "[a]n action in which a receiver has been appointed may be dismissed only by court order." Fed. R. Civ. P. 66.

*Id*. ¶¶ 29-30; Note (ECF No. 1-2); Mortgage (ECF No. 1-3). She also signed a "1-4 Family Rider" to the Mortgage providing that, upon the lender's notice to her of default, the lender would be "entitled to collect and receive all of the Rents of the Property" and "to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security." Mortgage at 16-18.

On October 29, 2008, MERS, as nominee for Residential Mortgage, assigned the Mortgage to SunTrust Mortgage, Inc. ECF No. 1-4. MERS executed a corrective assignment of the Mortgage to SunTrust on October 15, 2012. ECF No. 1-5. On October 5, 2013, SunTrust assigned the Mortgage to Federal National Mortgage Association (FNMA). ECF No. 1-6. On April 27, 2017, Residential Mortgage executed a Quitclaim Assignment conveying any and all rights it had under the Mortgage to FNMA. ECF No. 1-7. On January 28, 2020, FNMA assigned the Mortgage to U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II ("LSRMF"). ECF No. 1-8. On April 29, 2022, LSRMF assigned the Mortgage to BRAVO. ECF No. 1-9.

Although BRAVO alleges a recent default due to a loan modification, the 2006 loan has been in default since 2008. Affidavit of Matthew Kelly ("Kelly Aff.") (ECF No. 12-1) ¶ 5. On January 13, 2009, Gauthier filed the first of eight bankruptcy cases, the most recent of which was filed in California on May 15, 2018. Complaint ¶¶ 9-11, 13-14, 21-25. All were dismissed or terminated except for the third case, in which Gauthier received a Chapter 7 "final bankruptcy discharge" from the United States

Bankruptcy Court for the Northern District of California on January 17, 2012. *Id*. Although Gauthier's Chapter 7 bankruptcy discharge extinguished any personal liability for her defaulted loan, she declared an intent to reaffirm the debt secured by the Property. Kelly Aff. ¶ 9. She has neither reaffirmed nor paid that debt. *Id*. The loan has been in default since April 1, 2022. *Id.* ¶ 7.

The Property is a two-unit investment rental property, one unit of which is occupied by tenants who have been paying monthly rent to Gauthier. *Id.* ¶ 4. Despite collecting that rent, Gauthier, who resides in Newark, California, has failed to pay taxes or insurance premiums, make needed repairs, or make any monthly mortgage payments. *Id.* ¶¶ 3, 7. Because Gauthier's Chapter 7 bankruptcy discharge extinguished any personal liability for the loan, BRAVO seeks relief solely in the form of an *in rem* judgment of foreclosure and sale. *Id.* ¶ 8.

### III.    Discussion

BRAVO argues that the appointment of a receiver is warranted given that the Property is an investment rental; Gauthier lives out of state and is receiving the rent proceeds without making mortgage payments or footing the bills for taxes and insurance; BRAVO has advanced more than $8,518.73 for taxes and insurance without receiving any rent proceeds; and Gauthier is not liable for the underlying debt by virtue of her Chapter 7 bankruptcy discharge. *See* Motion at 1. BRAVO adds that one of the two rental units now is vacant, depriving it of rental payments that could be used to defray the Property's costs. *See id*.

Gauthier opposes the Motion on the bases that BRAVO lacks standing to bring this case and is not the real party in interest and that the appointment of a receiver is both unnecessary and premature. See Opposition at 2-11. I address these arguments in turn.

### A. Gauthier's Standing and Real-Party-in-Interest Challenges

Gauthier contends that BRAVO lacks standing because it has a "*Greenleaf* problem": it acquired its interest in the mortgage from MERS, a nominee possessing no interest in the mortgage other than the right to record it. See Opposition at 5; *Bank of Am., N.A. v. Greenleaf,* 2014 ME 89, ¶¶ 16-17, 96 A.3d 700 (holding that a bank lacked standing to seek foreclosure on a mortgage and note when it derived its interest in the mortgage solely from an assignment by MERS, which possessed—and therefore could confer—only one right: "the right to record the mortgage as nominee").

But Gauthier overlooks a critical detail: the *Greenleaf* problem was resolved when Residential Mortgage, the original lender in the chain of transactions in this case, executed a Quitclaim Assignment on April 27, 2017, conveying and assigning "any and all rights it may have under the Mortgage" to FNMA, which at that time held Gauthier's mortgage. See ECF No. 1-7. FNMA then assigned that now-full bundle of rights to LSRMF, which assigned them to BRAVO. See ECF Nos. 1-8, 1-9; *Fed. Nat'l Mortg. Ass'n v. Quinn,* No. 1:19-cv-00097-JAW, 2019 WL 6684489, at *2 (D. Me. Dec. 6, 2019) (observing that, although MERS as nominee for the original lender, Advanced Financial Services, had made an invalid assignment of a mortgage to Nationstar Mortgage LLC, which then invalidly assigned the mortgage to FNMA,

the problem was solved when the original lender "assigned the mortgage to FNMA with a quitclaim assignment").[3]

Gauthier next argues that BRAVO is not the real party in interest because Exhibit I to the Complaint reveals that the Mortgage was assigned to LSRMF. *See* Opposition at 6-7; ECF No. 1-9. She is mistaken. In the cited document, LSRMF assigned the mortgage to BRAVO. *See* ECF No. 1-9.[4]

### B. BRAVO's Request for the Appointment of a Receiver

As noted above, BRAVO argues that the appointment of a receiver is warranted because the Property is an investment rental owned by an out-of-state landlord who is shielded from liability for the underlying debt by a Chapter 7 bankruptcy discharge yet is receiving the rent proceeds without making mortgage payments or footing the bills for taxes and insurance. *See* Motion at 1.

Gauthier rejoins that the appointment of a receiver is unnecessary and premature until the merits are fully adjudicated and "would create even more

---

[3] Gauthier points out that the law firm representing BRAVO conceded in an earlier action in which it represented the then-owner of her mortgage, FNMA, that FNMA had a *Greenleaf* problem, as a result of which the law firm moved to dismiss the case without prejudice for lack of standing. *See* Opposition at 8; ECF No. 13-1. Because that case was dismissed without prejudice and the *Greenleaf* problem was subsequently resolved, it has no bearing on this case. *See, e.g., Finch v. U.S. Bank, N.A.*, 2024 ME 2, ¶ 32 n.9, 307 A.3d 1049 (citing *Bank of Am. v. Greenleaf*, 2015 ME 127, ¶¶ 2, 4, 9, 124 A.3d 1122, for the proposition that "a foreclosure action commenced by a lender that lacks standing is dismissed without prejudice").

[4] Gauthier asserts that BRAVO has two additional problems: it attached a purported 2020 assignment as Exhibit H to the Complaint that has no corporate seal and has "never show[n] a copy of the note it claims it owns." Opposition at 7. The Note is attached to the Complaint. *See* ECF No. 1-2. And, even if the 2020 assignment required a corporate seal, its omission is not fatal. An assignment of a mortgage that was "not drawn in accordance with statutory requirements is considered valid" if it has been "recorded for at least 2 years in the registry of deeds of the county or district in which the real property is located" and "fully identif[ies] the mortgage intended to be . . . assigned[.]" 33 M.R.S.A. § 353-A(2) (Westlaw). The document at issue fully identifies the mortgage to be assigned and was recorded more than four years ago in the York County Registry of Deeds. *See* ECF No. 1-8.

6

short-term hardship" for her, "risk her tenant walking away from the property," and "decidedly upset the status quo." Opposition at 10-11.

I conclude that the appointment of a receiver is warranted on several bases: that BRAVO has a contractual right to appoint a receiver and collect rent, is likely to succeed on the merits of its claim, has shown ongoing harm to its protectible interest in the Property, and has no adequate alternative remedy to redress that harm.

"[T]he First Circuit has suggested that the existence of an express contractual right to appointment of a receiver, coupled with adequate prima facie evidence of a default, can be sufficient to warrant such an appointment." *Pioneer Cap. Corp. v. Environamics Corp.*, No. Civ. 02-217-P-C, 2003 WL 345349, at *9 (D. Me. Feb. 14, 2003) (rec. dec.) (cleaned up), *aff'd*, 2003 WL 1923765 (D. Me. Apr. 23, 2003). Even when not determinative, such a provision has been deemed significant in weighing the equities of the appointment of a receiver pursuant to Federal Rule of Civil Procedure 66. *See, e.g., Cadence Bank, N.A. v. E. 15th St., Inc.*, No. 8:12-CV-1833-T-17EAJ, 2013 WL 2151743, at *3 (M.D. Fla. May 16, 2013) (concluding that in determining whether to appoint a receiver, a contractual receivership provision is, "at a minimum, . . . entitled to great weight"); *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 615-16 (D.N.J. 2012) (observing that "where the parties have agreed *ex ante* that, in the event of a default, the lender has the right to all rent payments and to the appointment of a receiver, . . . appointment of a receiver is not such a drastic remedy").

7

Gauthier executed a "1-4 Family Rider" to the Mortgage providing that, upon notice to her of default, the lender would be "entitled to collect and receive all of the Rents of the Property" and "to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security." Mortgage at 16-18. That is precisely what BRAVO is trying to do, weighing strongly in favor of the grant of the Motion.

BRAVO likely will prevail on the merits of its claim. In a separate pending motion, Gauthier seeks judgment as a matter of law or the dismissal of the Complaint on the bases that BRAVO lacks standing, is not the real party in interest, and is an unlicensed and unauthorized debt collector pursuant to the Maine Fair Debt Collection Practices Act. *See* Motion for Judgment (ECF No. 9) at 4-9. The first two points founder for the reasons discussed above, and Gauthier is unlikely to prevail on the third point.

BRAVO persuasively argues that because it is a creditor attempting to collect debt for itself in an *in rem* foreclosure proceeding, it is neither a "debt collector" nor a "debt buyer" for purposes of the FDCPA and, in any event, is exempt from the definition of a "debt buyer" because of its status as a national association under the supervision of the Comptroller of the Currency. *See* Judgment Opposition (ECF No. 10) at 3-5; 32 M.R.S.A. §11003(1) (Westlaw) (excluding from the definition of a "debt collector" officers or employees "of a creditor while, in the name of the creditor, collecting debts for that creditor"); *id*. § 11002(5-A) (Westlaw) (defining a "debt buyer"

8

as "a person that is regularly engaged in the business of purchasing charged-off consumer debt for collection purposes, whether the person collects the debt or hires a 3rd party" to do so); 9-A M.R.S.A. § 1-301(38-A(B)) (Westlaw) (defining "[s]upervised financial organization" to include entities "[o]rganized, chartered or holding an authorization certificate under the laws of . . . the United States that authorizes [them] both to make loans and to receive deposits") (cleaned up).[5]

BRAVO also makes the requisite showing of harm to its protectible interest in the Property to warrant the appointment of a receiver. While there is no suggestion that the Property is in physical disrepair, BRAVO has shown harm in the form of diminishment in its value by virtue of the loss of rental revenue. All the while, BRAVO has advanced more than $8,500 to cover taxes and insurance without receiving the benefit of rental payments from an investment rental property containing two units, one of which is vacant.

Finally, in this *in rem* foreclosure action, BRAVO has no adequate alternative remedy for the harms of diversion of the rental income from one of the units and the vacancy of the other. *See, e.g., Nissan Motor Acceptance Corp. v. Infiniti of Englewood, LLC,* No. 18cv17228 (EP) (MAH), 2023 WL 5321035, at *5-6 (D.N.J. Aug. 17, 2023) (finding that the plaintiff lender had no adequate legal remedy and granting its motion to appoint a receiver to manage properties owned by multiple defendants

---

[5] In her reply brief, Gauthier asserts that, while U.S. Bank Trust, N.A. may not be a "debt buyer," it is "acting in this case as a debt collector on behalf of a third party," BRAVO Residential Funding Trust 2021-C. Judgment Reply (ECF No. 11) at 2-4. However, U.S. Bank Trust, N.A. in its capacity as owner trustee of the BRAVO trust is the sole plaintiff here.

when the lender had advanced more than $1 million to pay delinquent taxes and was receiving no rent from unused properties).

The powers that BRAVO seeks for the receiver are tailored to the identified harm: "the determination of legal occupancy status," the "power to make necessary repairs and maintenance expenditures for the overall preservation of the subject property," and the power to collect "monthly rental payments from the tenants to be allocated toward expenses for maintenance, property insurance and property taxes." Proposed Order (ECF No. 12-2).

At bottom, as BRAVO suggests, Gauthier, who has been discharged from liability for the underlying debt, "seeks to have her cake and eat it too" by continuing to manage and receive rental payments for the Property. Motion at 7.

## IV. Conclusion

For the foregoing reasons, I recommend that BRAVO's motion to appoint Benjamin P. Campo, Jr., Esq., as Receiver of the Property be **GRANTED**. Should the Court agree, I further recommend that Benjamin P. Campo, Jr., Esq. be appointed Receiver of the real property located at 14-16 Melvin Avenue, Old Orchard Beach, ME 04064, with the powers to determine legal occupancy status, make necessary repairs and maintenance expenditures for the overall preservation of the Property, and collect monthly rental payments from the tenants to be allocated toward expenses for maintenance, property insurance, and property taxes.

## *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District*

*Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: May 3, 2024

<u>/s/ Karen Frink Wolf</u>
United States Magistrate Judge
