UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. BANK TRUST NATIONAL                )
ASSOCIATION, *Not in Its Individual*    )
*Capacity, but Solely as Owner Trustee of*  )
BRAVO RESIDENTIAL FUNDING TRUST  )
2021-C,                                 )
                Plaintiff,        )
                                        )
     v.                              )        2:23-cv-00380-JAW
                                        )
MARGARET L. GAUTHIER,                   )
                                        )
              Defendant.         )

**OMNIBUS ORDER**

Before the court is a foreclosure complaint by a mortgagee against a mortgagor, seeking a judgment of foreclosure and sale against a property located in Old Orchard Beach, Maine. What would otherwise be a standard foreclosure action has exploded with motions. In this omnibus order, the court has addressed and resolved each pending motion.

First, concluding that the plaintiff has standing to bring the present suit, the court dismisses the defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, alternatively, for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1).

Next, the court dismisses the defendant's multiple objections and motions for sanctions, reconsideration, forensic examination, and to strike relating to the authenticity of the promissory note and mortgage at issue in this suit, concluding that a previous order from the court determined that the plaintiff has complied with

its pre-trial obligations regarding the same and will be required to produce the original note and mortgage at trial in accordance with Maine Law Court precedent. For the same reason, the court dismisses the plaintiff's motion for a status conference to allow the defendant to view the note ahead of trial.

The court grants the plaintiff's motion to appoint a receiver, in accordance with the magistrate judge's recommended decision.

The court grants the plaintiff's motion to substitute as party plaintiff the bank which has purportedly assumed the disputed mortgage.

The court grants in part and dismisses in part the defendant's third motion for judicial notice regarding a recent decision by the Law Court.

Finally, the court dismisses the defendant's motion for summary judgment on procedural grounds.

## I.   PROCEDURAL BACKGROUND

### A.   Margaret Gauthier's Motion for Judgment on the Pleadings or, Alternatively, for Dismissal

On October 5, 2023, U.S. Bank Trust National Association, not in its individual capacity, but solely as owner trustee of BRAVO Residential Funding Trust 2021-C (Bravo), filed a complaint against Margaret L. Gauthier seeking an *in rem* judgment of foreclosure and sale pursuant to 14 U.S.C. § 6322 against the property located at 14-16 Melvin Avenue, Old Orchard Beach, Maine 04064 (the Property). *Compl.* (ECF No. 1). In its complaint, Bravo alleged it is the holder of the promissory note (the Note) and mortgage (the Mortgage) to the Property, that Ms. Gauthier was in breach of the Note by failing to make payment due as of April 1, 2022, and that the total debt

owed under the Mortgage amounted to $568,597.48.  *Id.* at ¶¶ 41, 43; Prayer for Relief, § C.  On March 6, 2024, Ms. Gauthier filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, alternatively, for dismissal of Bravo's complaint pursuant to Rule 12(b)(1).[1]  *Def. Margaret Gauthier's [Mot.] for J. as a Matter of L. or Mot. to Dismiss Pl.'s Compl.* (ECF No. 9) (*Def.'s Pleadings J. or Dismissal Mot.*).  On March 15, 2024, Bravo responded in opposition.  *Opp'n to Def.'s Mot. for J. as a Matter of L., or Mot. to Dismiss Pl.'s Compl.* (ECF No. 10) (*Pl.'s Pleadings J. or Dismissal Opp'n*).  On March 21, 2024, Ms. Gauthier replied.  *Def. Margaret Gauthier's Reply to Pl.'s Opp'n to [Def.'s] Mot. for J. as a Matter of L., or Mot. to Dismiss Pl.'s Compl.* (ECF No. 11) (*Def.'s Pleadings J. or Dismissal Reply*).

## B.    The Magistrate Judge's Recommended Decision on Bravo's Motion to Appoint Receiver

On March 25, 2024, Bravo moved to appoint Benjamin P. Campo, Jr., Esq. as receiver for the Property.  *Mot. to Appoint Receiver* (ECF No. 12).  Ms. Gauthier opposed this motion on April 3, 2024.  *Def. Margaret Gauthier's Mem. in Opp'n to Pl.'s Mot. for Appointment of Receiver* (ECF No. 13).  Bravo replied on April 9, 2024.  *Reply to Opp'n to Mot. to Appoint Receiver* (ECF No. 14).

---

[1]    The Defendant titles her motion "Defendant Margaret Gauthier's [Motion] for Judgment as a Matter of Law, or Motion to Dismiss Plaintiff's Complaint."  *Def.'s Mot. for J. on the Pleadings or Dismissal* at 1.  In its introduction, the motion says: "**COMES NOW** Defendant . . . Ms. Gauthier . . . and files this Motion for Judgment on the Pleadings, and alternatively a Motion to Dismiss the Complaint filed by Plaintiff."  *Id.* (emphasis in original).  Further, the motion concludes that "Defendant is entitled to Judgment on the Pleadings.  In the alternative, the Complaint . . . must be dismissed with prejudice."  *Id.* at 10.  The Defendant further asks the Court to: "1) Grant Judgment in her favor on the pleadings; or 2) Alternatively to dismiss Plaintiff's Complaint."  *Id.*

The Court thus treats Ms. Gauthier's motion as a motion for judgment on the pleadings or, alternatively, for dismissal.

On May 3, 2024, the Magistrate Judge filed her recommended decision with the Court, which concluded that the appointment of receiver was warranted. *Recommended Decision on Mot. to Appoint Receiver* (ECF No. 16) (*Recommended Decision*). Ms. Gauthier filed an objection to the Recommended Decision on May 17, 2024. *Def. Margaret Gauthier's Objs. to Mag.'s R. & R. to Appoint Receiver* (ECF No. 17) (*Def.'s Recommended Decision Obj.*)*; see also Additional Attachs.* (ECF No. 20). Bravo responded to Ms. Gauthier's objection on May 31, 2024. *Resp. to Obj. by Def. Margaret Gauthier* (ECF No. 19) (*Pl.'s Recommended Decision Resp.*). Ms. Gauthier replied on June 3, 2024. *Def. Margaret Gauthier's Reply to Pl.'s Resp. to Def.'s Objs. to Mag.'s Recommendations* (ECF No. 21) (*Def.'s Recommended Decision Reply*).

### C.    Margaret Gauthier's Omnibus Objections to the Court's Order Deeming the Order to Clarify Resolved

This motion sequence has a complicated procedural history that warrants explanation. On May 27, 2024, Ms. Gauthier requested the Court take judicial notice of (1) a case previously decided by the Court, *Fannie Mae v. Quinn*, No. 1:19-cv-00097-JAW, 2019 U.S. Dist. LEXIS 212661 (D. Me. Dec. 6, 2019), in which the Court, pursuant to *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, ¶ 12, 69 A.3d 411, required a plaintiff seeking to foreclose on a mortgage to demonstrate a legal interest in both the note and the mortgage, and (2) the contents of a letter which Ms. Gauthier attached to her motion, allegedly showing that the original lender sold the loan to SunTrust Mortgage, Inc. *Def. Margaret Gauthier's Req. for Jud. Notice* (ECF No. 18) (*Def.'s First Jud. Notice Req.*); *id.*, Attach. 1, *Residential Mortgage Servs. Inc. Transfer/Sale of Loan.* On June 17, 2024, Bravo responded in opposition. *Resp. to*

*Def. Margaret Gauthier's Req. for Jud. Notice* (ECF No. 22) (*Pl.'s First Jud. Notice Opp'n*).  On June 18, 2024, Ms. Gauthier replied.  *Def. Margaret Gauthier's Reply to Pl.'s Resp. to Def.'s Req. for Jud. Notice* (ECF No. 23) (*Def.'s First Jud. Notice Reply*).

On July 23, 2024, the Court concluded that the record established Bravo held the Mortgage, but it was unclear whether Bravo held the Note.  *Order to Produce* (ECF No. 25).  Thus, before deciding whether it would accept the Magistrate Judge's Recommended Decision, the Court ordered Bravo to produce evidence that it holds the Note in question.  *Id.* at 2.  In compliance with the Court's order, on July 30, 2024, Bravo's attorney, Reneau J. Longoria, Esq., filed an affidavit in which she averred that her law office was holding the Note in its locked, secure, and fireproof cabinets and that the last assignment of the Mortgage had been to U.S. Bank Trust, National Association (U.S. Bank).  *Aff. of Note Holder* at 2 (ECF No. 27); *see also Additional Attachs.* (ECF No. 28).  However, Attorney Longoria also informed the Court that on July 3, 2024, UMB Bank, National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Title Trust XIII (UMB Bank), had acquired ownership of the Note effective May 31, 2024.  *Aff. of Note Holder* at 2.  Attorney Longoria further reported that "[o]nce the assignment of the mortgage is executed and delivered reflecting the change in ownership, a Motion to Substitute the Plaintiff will be filed."  *Id.* at 3.

On August 2, 2024, Ms. Gauthier filed a motion to strike and objection to the admission of the Note submitted by Bravo.  *Def. Margaret Gauthier's Mot. to Strike and Obj. to Admis. of Alleged "Original" Promissory Note* (ECF No. 29) (*Def.'s Mot. to*

*Strike and Obj.*).  Also on August 2, 2024, Ms. Gauthier requested the Court take judicial notice of "Plaintiff's lack of standing to foreclose and of its lack of jurisdiction to appoint a receiver." *Def.'s Request for Jud. Notice* at 3 (ECF No. 30) (*Def.'s Second Jud. Notice Req.*).  On August 22, 2024, Bravo responded in opposition to Ms. Gauthier's second request for judicial notice (ECF No. 30) and motion to strike (ECF No. 29).  *Resp. to Def. Margaret Gauthier's Mot. to Strike and Obj. to Admis. of Alleged Original Promissory Note* (ECF No. 38).

On August 12, 2024, the Court ordered Attorney Longoria to file a supplemental affidavit within two weeks of the date of the order, explaining the delay in coordinating her receipt of the assigned Mortgage and when she anticipates this would be rectified.  *Order to Clarify* (ECF No. 34).  In compliance, on August 21, 2024, Attorney Longoria submitted an affidavit informing the Court that on August 13, 2024, the servicer of the mortgage loan executed an assignment of mortgage from U.S. Bank to UMB Bank and recorded said assignment on August 20, 2024 in the York County Registry of Deeds.  *Aff. in Resp. to Order to Clarify* at 2 (ECF No. 35) (citing *id.*, Attach. 1, *Corp. Assignment of Mortg.*).  On August 22, 2024, the Court deemed the Order to Clarify resolved by Attorney Longoria's affidavit.  *Order* (ECF No. 37) (*Order on Clarify Order*).

Ms. Gauthier's objections ensued.  On August 26, 2024, Ms. Gauthier filed a motion to strike and objection to the promissory Note submitted by Bravo.  *Def. Margaret Gauthier's Mot. to Strike and Obj. to Admis. of Alleged "Original" Promissory Note* (ECF No. 39).  On September 9, 2024, Bravo responded, *Resp. to Def.*

*Margaret Gauthier's Mot. to Strike and Obj. to Admis. of Alleged Promissory Note* (ECF No. 48), and Ms. Gauthier replied on September 18, 2024. *Def. Margaret Gauthier's Reply to Pl.'s Resp. to Mot. to Strike & Obj. to Admis. of Alleged Promissory Note* (ECF No. 51).

Also on August 26, 2024, Ms. Gauthier filed a motion to compel production of the original Note. *Def. Margaret Gauthier's Mot. to Compel Produc. of the Original Note* (ECF No. 40). Bravo responded on September 9, 2024. *Resp. to Def. Margaret Gauthier's Mot. to Compel Produc. of the Original Promissory Note* (ECF No. 47). The Defendant replied on September 18, 2024. *Def. Margaret Gauthier's Reply to Pl.'s Resp. to Mot. to Compel Produc. of Original Promissory Note* (ECF No. 50).

Also on August 26, 2024, Ms. Gauthier moved the Court to reconsider and objected to the Court's order deeming the order to clarify resolved. *Def.'s Mot. for Recons. and Obj. to Ct.'s Order Deeming the Order to Clarify Resolved* (ECF No. 41) (*Def.'s Obj. to Resolved Clarification Order*); *Obj.* (ECF No. 42). On September 9, 2024, Bravo filed its response. *Resp. to Def. Margaret Gauthier's Mot. for Recons. and Obj. to Ct. Order dated Aug. 22, 2024* (ECF No. 46). Ms. Gauthier replied on September 18, 2024. *Def. Margaret Gauthier's Reply to Pl.'s Resp. to Mot. for Recons. and Obj. to Ct. Order* (ECF No. 49).

Also on August 26, 2024, Ms. Gauthier filed a supplemental brief addressing her allegation that Plaintiffs failed to produce the original Note. *Def. Margaret Gauthier's Suppl. Br. Addressing Pl.'s Failure to Produce the Original Note* (ECF No. 43).

On August 29, 2024, Bravo moved to schedule a status conference to resolve any outstanding issues regarding the Note. *Mot. to Schedule a Status Conf. for the Purpose of Presenting the Original Promissory Note and to Address Any Unresolved Issues and/or Claims Pertaining to the Original Promissory Note* (ECF No. 45). On September 18, 2024, Ms. Gauthier responded in opposition. *Def. Margaret Gauthier's Resp. to Pl.'s Mot. to Schedule a Status Conf.* (ECF No. 52). Bravo replied on October 2, 2024. *Reply to Def. Margaret Gauthier's Resp. to Pl.'s Mot. to Schedule a Status Conf.* (ECF No. 53).

On October 2, 2024, Ms. Gauthier filed a motion for sanctions against Bravo and Attorney Longoria, the latter in her capacity as Bravo's counsel. *Def. Margaret Gauthier's Mot. for Sanctions Against Pl. and Pl.'s Counsel* (ECF No. 54). That same day, Ms. Gauthier moved for forensic examination of the Note and Mortgage. *Def. Margaret Gauthier's Mot. for Forensic Examination of Promissory Note and Mortg.* (ECF No. 56). On October 23, 2024, Bravo responded in opposition to both motions. *Opp'n to Def. Margaret Gauthier's Mots. for Forensic Examination and Sanctions* (ECF No. 67). On October 24, 2024, Ms. Gauthier replied. *Def. Margaret Gauthier's Reply to Pl.'s Opp'n to Mots. for Forensic Examination and Sanctions* (ECF No. 68). On November 5, 2024, Bravo moved to strike Ms. Gauthier's reply. *Mot. to Strike* (ECF No. 71). On November 7, 2024, the Defendant filed her opposition to the Plaintiff's motion to strike. *Def.'s Opp'n to Pl.'s Mot. to Strike* (ECF No. 73).

On October 22, 2024, Ms. Gauthier filed a motion to compel discovery regarding the payment history of the loan, the loan modification agreement, chain of

title of the Note and Mortgage, the original Note, and Bravo's transfer in interest to UMB Bank. *Def. Margaret Gauthier's Mot. to Compel Disc.* At 1-2 (ECF No. 63). On November 12, 2024, Bravo responded. *Pl.'s Resps. to Def.'s Mot. to Strike, [ECF 62], Mot. to Compel Disc., [ECF 63] and Mot. to Take Jud. Notice of Transfers, Foreclosures and Assignments [ECF 64]* (ECF No. 74) (*Pl.'s Strike, Compel, Third Jud. Notice Resps.*). On November 15, 2024, Ms. Gauthier replied. *Def.['s] Reply to Pl.'s Omnibus Resp.* (ECF No. 77).

### D.    Bravo's Motion to Substitute Party

On August 21, 2024, Bravo filed a motion to substitute UMB Bank as Plaintiff in the instant matter. *Mot. for Substitution of Pl.* (ECF No. 36) (*Pl.'s Substitution Mot.*). On October 2, 2024, Ms. Gauthier responded in opposition. *Def. Margaret Gauthier's Obj. to Any Mot. to Substitute Pl.* (ECF No. 55) (*Def.'s Substitute Opp'n*). On October 16, 2024, Bravo replied. *Reply to Def. Margaret Gauthier's Obj. to Mot. to Substitute* (ECF No. 61) (*Pl.'s Substitution Reply*). On October 22, 2024, Ms. Gauthier moved to strike Bravo's reply and also noted her objection to Bravo's reply. *Def.'s Mot. to Strike Pl.'s Reply, Req. for Sanctions, and Req. for Order to Show Cause* (ECF No. 62); *Def. Margaret Gauthier's Obj. to Pl.'s Reply to Obj. to Mot. to Substitute* (ECF No. 65) (*Def.'s Substitute Obj.*). On November 5, 2024, Bravo moved for leave to file a surreply to Ms. Gauthier's opposition to the motion to substitute. *Pl.'s Mot. for Leave to File a Surreply to Def. Margaret Gauthier's "Opp'n" to Pl.'s Reply to Mot. to Sub.* (ECF No. 70). On November 7, 2024, Ms. Gauthier filed her opposition to Bravo's motion for leave. *Def.'s Opp'n to Pl.'s Mot. for Leave to File Surreply* (ECF

No. 72).  On November 12, 2024, Bravo responded to Ms. Gauthier's motion to strike. *Pl.'s Strike, Compel, Third Jud. Notice Resps.*  On November 15, 2024, Ms. Gauthier replied.  *Def.['s] Reply to Pl.'s Omnibus Resp.*

### E.   Margaret Gauthier's Third Request for Judicial Notice

On October 22, 2024, Ms. Gauthier filed a third motion for judicial notice, now moving the Court to take notice of a January 11, 2024 decision by the Maine Supreme Judicial Court, *Finch v. U.S. Bank, N.A.*, 2024 ME 2, 207 A.3d 1049, 1055.  *Def.'s Mot. to Take Jud. Notice of Transfers, Foreclosures and Assignments and their Relevance to this Case* (ECF No. 64) (*Def.'s Third Jud. Notice Mot.*).  On November 12, 2024, Bravo responded.  *Pl.'s Strike, Compel, Third Jud. Notice Resps.*  On November 15, 2024, Ms. Gauthier replied.  *Def.['s] Reply to Pl.'s Omnibus Resp.*

### F.   Margaret Gauthier's Motion for Summary Judgment

On November 21, 2023, the Magistrate Judge issued a scheduling order informing the parties that the deadline to file notice of intent to file a motion for summary judgment and need for a pre-filing conference pursuant to Local Rule 56(h) was April 16, 2024.  *Scheduling Order* at 2 (ECF No. 8).  The deadline to file objections to the scheduling order was December 12, 2023.  *Id.* at 1.  Neither party objected before the deadline and thus the scheduling order "constitute[s] the Court's Scheduling Order under Fed.[]R.[]Civ.[]P. 16(b)."  *Id.*

In addition, neither party submitted a notice of intent to file a motion for summary judgment, as Local Rule 56(h) and the Court's scheduling order require.

Nonetheless, on November 15, 2024, Ms. Gauthier filed a motion for summary judgment. *Def.'s Mot. for Summ. J.* (ECF No. 75).

With this extensive procedural history behind it, the Court now turns to the parties' positions and its discussion of the pending motions.

## II. THE MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR DISMISSAL

### A. Factual Background[2]

#### 1. The Underlying Complaint

##### a. The Parties

Plaintiff U.S. Bank Trust, N.A., appearing not in its individual capacity, but solely as owner trustee of BRAVO Residential Funding Trust 2021-C, is a National

---

[2]     When addressing a Rule 12(b)(1) motion to dismiss, a court may consider "facts outside the pleadings." *Martinez-Rivera v. Puerto Rico*, 812 F.3d 69, 74 (1st Cir. 2016); *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996). Unlike in a 12(b)(6) motion, "[t]he attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 [summary judgment] motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

"In considering a motion under . . . [Rule] 12(c), the court generally may not consider matters outside the pleadings without converting the motion to one for summary judgment. However, there are well recognized exceptions to this principle." *Pimental v. Wells Fargo Bank, N.A.*, No. 14-494S, 2015 U.S. Dist. LEXIS 120571, at *12 (D.R.I. Sept. 4, 2015), *aff'd* 2016 U.S. Dist. LEXIS 1825 (D.R.I. Jan. 5, 2016) (internal citations omitted). "In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [a court] may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (under Rule 12(b)(6)). "This is true even when the documents are incorporated into the movant's pleadings." *Id.* (citing *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document [offered by the movant] (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it") (citing *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988)).

Thus, as is appropriate in ruling on either a Rule 12(b)(1) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, the Court considered the pleadings and the attachments to the pleadings in ruling on this motion, including (1) *Complaint*, Attach. 1, *A Legal Description* (ECF No. 1-1); (2) *Complaint*, Attach. 2, *Note* (ECF No. 1-2); (3) *Complaint*, Attach. 3, *Mortgage* (ECF No. 1-3); (4) *Complaint*, Attach. 7, *Quitclaim Assignment* (ECF No. 1-7); (5) *Complaint*, Attach. 8, *Assignment*

Association under the regulation of the Office of the Comptroller of the Currency with its principal place of business in Wilmington, Delaware.  *Compl.* ¶ 4.

Defendant Margaret L. Gauthier is a resident of Newark, California.  *Id.* ¶ 5.

### b.    Chain of Title

On June 17, 2004, by virtue of a Warranty Deed from Northern Ventures, LLC, which is recorded in the New York County Registry of Deeds in Book 14133, Page 492, the Property situated at 14-16 Melvin Avenue in Old Orchard Beach, Maine, was conveyed to Ms. Gauthier.  *Id.* ¶ 28 (citing *id.*, Attach. 1, *A Legal Description* (ECF No. 1-1)).[3]

On June 2, 2006, the Defendant executed and delivered to Residential Mortgages Services, Inc. a certain Note under seal in the amount of $269,000.00.  *Id.* The Defendant's personal liability is limited and/or extinguished by the Chapter 7 bankruptcy filing which resulted in a bankruptcy discharge.  *Id.* ¶ 29 (citing *id.*, Attach. 2, *Note* (ECF No. 1-2)).

To secure the Note, Ms. Gauthier executed a Mortgage Deed in favor of Mortgage Electronic Registration Systems, Inc. (MERS), which is recorded in the York County Registry of Deeds in Book 14860, Page 0576.  *Id.* ¶ 30 (citing *id.*, Attach. 3, *Mortg.* (ECF No. 1-3) (*MERS Mortg.*)).   The Mortgage was then assigned to SunTrust Mortgage, Inc. by virtue of an Assignment of Mortgage dated October 29, 2008.  *Id.* ¶ 31.  The assignment is recorded in the York County Registry of Deeds in

---

*of Mortgage* (ECF No. 1-8); and (6) *Complaint*, Attach. 9, *Corporate Assignment of Mortgage* (ECF No. 1-9).

[3]     Attachment 3 is the legal description of the property that was attached as Exhibit A to the mortgage.

Book 15517, Page 0740. *Id.* (citing *id.*, Attach. 4, *Assignment of Mortg.* (ECF No. 1-4) (*SunTrust Mortg. Assignment*)). By virtue of an October 16, 2012 Corrective Assignment of Mortgage, the Mortgage was assigned to SunTrust Mortgage, Inc. and recorded in the York County Registry of Deeds in Book 16438, Page 959. *Id.* ¶ 32 (citing *id.*, Attach. 5, *Corrective Corp. Assignment of Mortg.* (ECF No. 1-5) (*Corrective SunTrust Mortg. Assignment*)).

The Mortgage was then assigned to Federal National Mortgage Association (FNMA) by virtue of an Assignment of Mortgage dated October 15, 2013 and recorded in the York County Registry of Deeds in Book 16717, Page 349. *Id.* ¶ 33 (citing *id.*, Attach. 6, *Corp. Assignment of Mortg.* (ECF No. 1-6) (*FNMA Mortg. Assignment*)). The Mortgage was further assigned to FNMA by virtue of a Quitclaim Assignment dated April 27, 2017 and recorded in the York County Registry of Deeds in Book 17493, Page 561. *Id.* ¶ 34 (citing *id.*, Attach. 7, *Quitclaim Assignment* (ECF No. 1-7) (*Quitclaim Assignment*)).

The Mortgage was then assigned to U.S. Bank Trust, N.A., as Trustee for LSRMF MH Master Participation Trust II by virtue of an Assignment of Mortgage dated January 28, 2020, and recorded in the York Country Registry of Deeds in Book 18156, Page 866. *Id.* ¶ 35 (citing *id.*, Attach. 8, *Assignment of Mortg.* (ECF No. 1-8) (*LSRMF Assignment*)).

The Mortgage was subsequently assigned to Bravo, by virtue of an Assignment of Mortgage dated April 29, 2022 and recorded in the York County Registry of Deeds

in Brook 19017, Page 920. *Id.* ¶ 36 (citing *id.*, Attach. 9, *Corp. Assignment of Mortg.* (ECF No. 1-9) (*Bravo Mortg. Assignment*)).

On October 5, 2022, the Defendant was sent a Notice of Mortgagor's Right to Cure, *id.* ¶ 37 (citing *id.*, Attach. 10, *Notice of Default—Right to Cure Letter*) (ECF No. 1-10) (*Demand Letter*)), as evidenced by the Certificate of Mailing. *Id.* (citing *Demand Letter*). The Demand Letter informed Ms. Gauthier of the payment due date, the total amount necessary to cure the default, and the deadline by which the default must be cured, which was thirty-five days from receipt of the demand letter. *Id.* ¶ 38 (citing *Demand Letter*). The Defendant failed to cure the default prior to the expiration of the Demand Letter. *Id.* ¶ 39.

Bravo purports to be the present holder of the Note pursuant to endorsement by the previous holder (if applicable), payment of value and physical possession of the Note in conformity with 11 M.R.S. §§ 3-1201 *et seq.* and *Simansky v. Clark*, 147 A.205, 128 Me. 280 (1929)). *Id.* ¶ 40. Bravo additionally certifies it is the lawful holder and owner of the Note and Mortgage. *Id.* ¶ 41.

Bravo states that "all steps mandated by law to provide notice to the mortgagor pursuant to 14 M.R.S. § 61111 and/or Note and Mortgage were strictly performed." *Id.* ¶ 42.

The total debt owed under the Note and Mortgage as of August 1, 2023 is $568,597.48, which includes: the principal balance ($540,602.13), interest ($20,460.97), Escrow/impound advance balance ($6,224.48), and loan level advance balance ($1,309.90). *Id.* ¶ 43.

Upon Bravo's information and belief, at the time of the filing of the complaint, the Defendant was not in possession of the Property originally secured by the Mortgage. *Id.* ¶ 44.

Ms. Gauthier is not in the military. *Id.* ¶ 54 (citing *id.*, Attach. 11, *Aff. Relating to Mil. Search* (ECF No. 1-11)).

### c.    Litigation History

This Loan has been in default since 2008 and "has an extremely long litigation history." *Id.* ¶ 6.  Ms. Gauthier has filed eight unsuccessful bankruptcy cases since she first defaulted on her obligations under the Loan. *Id.* ¶ 7.

In November 2008, a prior owner of the Loan filed a judicial foreclosure action in Maine District Court in Biddeford/Saco, Docket No. RE-2008-345. *Id.* ¶ 8.  In response, on January 13, 2009, Ms. Gauthier filed a bankruptcy petition pursuant to Chapter 11 with the U.S. Bankruptcy Court for the District of Nevada, No. 09-10380, which was dismissed on April 21, 2009. *Id.* ¶ 9 (citing *In re Gauthier*, No. 09-10380 (Bankr. D. Nev. 2009)) (citation amended).  On May 26, 2009, Ms. Gauthier filed a second bankruptcy action, now pursuant to Chapter 7, with the U.S. Bankruptcy Court for the District of Nevada, No. 09-18564, which was dismissed on September 3, 2009. *Id.* ¶ 10 (citing *In re: Gauthier*, No. 09-18564 (Bankr. D. Nev. 2009)) (citation amended).  On February 8, 2011, Ms. Gauthier filed a third bankruptcy petition, also pursuant to Chapter 7, with the U.S. Bankruptcy Court for the Northern District of California (California Bankruptcy Court), No. 11-41361 (the Third Bankruptcy Case), and received a "final bankruptcy discharge" on January 17, 2012. *Id.* ¶ 11.

On March 15, 2013, Fannie Mae, a prior owner of the Loan, filed a second foreclosure action with the Biddeford District Court, No. RE-13-44. *Id.* ¶ 12. On July 20, 2016, the Biddeford District Court granted Fannie Mae's motion to dismiss the 2013 foreclosure action without prejudice. *Id.* ¶ 12 n.1.

Although she received a bankruptcy discharge in the Third Bankruptcy Case, Ms. Gauthier filed a fourth bankruptcy petition, this pursuant to Chapter 13, with the California Bankruptcy Court, which was dismissed on January 14, 2014. *Id.* ¶ 13 (citing *In re Gauthier*, No. 13-44528 (Bankr. N.D. Cal. 2014)) (citation amended). The Defendant filed a fifth bankruptcy petition, pursuant to Chapter 7, with the California Bankruptcy Court, No. 14-4308, which was terminated on February 10, 2015. *Id.* ¶ 14. Ms. Gauthier then filed an *ex parte* emergency motion in the Third Bankruptcy Case. *Id.* (citing *In re Gauthier*, No. 14-43804 (Bankr. N.D. Cal. 2015); *In re: Gauthier*, No. 11-41361 (Bankr. N.D. Cal. 2015) (ECF No. 71) (*In re: Gauthier*, No. 11-41361 (ECF No. 71)) (citations amended). The emergency motion sought an order from the California Bankruptcy Court determining that Fannie Mae, as assignee of the Note and Mortgage from SunTrust Mortgage, through its servicer Seterus, Inc., was in contempt of the discharge order by attempting to collect on the Note and enforce the Mortgage. *Id.* ¶ 15 (citing *In re: Gauthier*, No. 11-41361 (ECF No. 71)).

On June 9, 2015, after a hearing, the California Bankruptcy Court denied the motion and all requested relief. *Id.* ¶ 16 (citing *In re Gauthier*, No. 11-41361 (Bankr. N.D. Cal. 2015) (ECF No. 75)) (citation amended). Ms. Gauthier appealed the order

16

to the U.S. District Court for the Northern District of California, and while the appeal was pending, on September 9, 2015, Seterus, as servicer for Fannie Mae, filed a motion for relief from stay to proceed with the foreclosure.  *Id.* ¶ 17 (citing *In re: Gauthier*, No.11-41361 (ECF No. 97); *Gauthier v. Doonan, Graves & Longoria LLC*, No. C 15-02973 WHA, 2015 U.S. Dist. LEXIS 157397 (N.D. Cal. 2015) (ECF No. 1)) (citation amended).  On September 30, 2015, after a hearing, the California Bankruptcy Court entered an order that the motion to stay was moot because "no stay is in effect regarding this property."  *Id.* ¶ 18 (citing *In re: Gauthier*, No. 11-41361 (ECF No. 108)).  On November 23, 2015, the California District Court affirmed and entered final judgment against Ms. Gauthier.  *Id.* ¶ 19 (citing *Gauthier*, 2015 U.S. Dist. LEXIS 157397 (ECF No. 26)) (citation amended).

Ms. Gauthier appealed the district court's order and final judgment to the Ninth Circuit Court of Appeals on December 21, 2015.  *Id.* ¶ 20 (citing *Gauthier*, 2015 U.S. Dist. LEXIS 157397 (ECF No. 27)) (citation amended).  On May 11, 2017, the Ninth Circuit affirmed the California Bankruptcy Court's order denying Ms. Gauthier's motion for contempt for alleged violation of the discharge injunction, holding that the bankruptcy court had not abused its discretion because Ms. Gauthier "failed to show appellees violated the discharge injunction by pursing *in rem* proceedings."  *Id.* (citing *Gauthier*, 2015 U.S. Dist. LEXIS 157397 (ECF No. 35)) (citation amended).

On January 17, 2017, Ms. Gauthier filed her sixth bankruptcy case, pursuant to Chapter 13, with the California Bankruptcy Court. *Id.* ¶ 21 (citing *In re Gauthier*, No. 17-40115 (Bankr. N.D. Cal. 2017)) (citation amended).

On August 18, 2017, the California Bankruptcy Court granted Fannie Mae's motion for relief from stay to proceed with the foreclosure, and on September 20, 2017, denied Ms. Gauthier's motion to vacate the relief from stay order. *Id.* ¶ 22 (citing *In re Gauthier*, No. 17-40115 (ECF No. 84)). Then, on October 24, 2017, after a hearing, the California Bankruptcy Court granted the bankruptcy trustee's motion to dismiss. *Id.* (citing *In re Gauthier*, No. 17-40115 (ECF No. 121)). In her complaint in the 2017 California Bankruptcy Court case, Ms. Gauthier admits that, in opposing Fannie Mae's Proof of Claim, the presiding judge "said I was just scheming to delay foreclosure." *Id.* ¶ 22 n.3 (citing *In re Gauthier*, No. 17-40115, *Compl.* ¶ 21).

On January 19, 2018, Ms. Gauthier filed a seventh bankruptcy petition, pursuant to Chapter 13, with the California Bankruptcy Court, which was dismissed on February 5, 2018 and closed on March 13, 2018. *Id.* ¶ 23 (citing *In re Gauthier*, No. 18-40159 (ECF No. 14) (Bankr. N.D. Cal. 2018)) (citation amended).

On May 15, 2018, Ms. Gauthier filed her eighth bankruptcy petition, pursuant to Chapter 13, with the California Bankruptcy Court, *In re Gauthier*, No. 18-41136. *Id.* ¶ 24. The bankruptcy court dismissed the case on June 1, 2018. *Id.* ¶ 25 (citing *In re Gauthier*, No. 18-41136 (Bankr. N.D. Cal. 2018) (ECF No. 14)) (citation amended).

On August 5, 2020, Ms. Gauthier filed a multi-count complaint in the U.S. District Court for the District of Maine, *Gauthier v. US Bank Trust, NA*, No. 2:20-cv-00283-LEW, 2021 U.S. Dist. LEXIS 19661 (D. Me. 2021). *Id.* ¶ 26 (citation amended). On February 2, 2021, the Court dismissed with prejudice the "counts related to purported claims as to the assignments from origination to October 15, 2012, all claims for alleged 'slander' against Gauthier's title, emotional distress and all claims against a prior servicer"; the remaining claims in the complaint were dismissed without prejudice. *Id.* ¶ 27 (citing *id.*, Attach. 12, *Combined Order on Outstanding Mots.* (ECF No. 1-12)).

### B.    The Parties' Positions

#### 1.    Bravo's Complaint

##### a.    One: Foreclosure and Sale

Bravo moves the Court to issue a judgment of foreclosure and sale respecting the Property located at 14-16 Melvin Avenue in Old Orchard Beach, Maine. *Id.* ¶ 46 (citing *A Legal Description*).

In support, Bravo asserts that it is the holder of "the Note referenced in Paragraph 29 pursuant to endorsement by the previous holder (if applicable) and physical possession of the aforesaid Note in conformity with Title 11, section 3-1201, et seq. of the Maine Revised Statutes and *Simansky v. Clark*, 147 A. 205, 128 Me. 280 (1929)." *Id.* ¶ 47.  It argues that it thus has the right to foreclosure and sale upon the Property.  *Id.*  Bravo alleges further that it is the "current owner and investor of the aforesaid Mortgage and Note." *Id.* ¶ 48.

The Plaintiff reports that Ms. Gauthier is presently in default on the Mortgage and Note; having failed to make the monthly payment due April 1, 2022, and all subsequent payments, Bravo argues Ms. Gauthier has breached the condition of the Mortgage and Note.  *Id.* ¶ 49.  The Plaintiff states that the total debt owed under the Note and Mortgage, as of August 1, 2023, is $568,597.48.  *Id.* ¶ 50.

The Plaintiff informs the Court that it sent notice, in conformity with 14 M.R.S. § 6111, to Ms. Gauthier on October 5, 2022.  *Id.* ¶ 53 (citing *Demand Letter*).

Bravo avers that records held at the York County Registry of Deeds indicate that there are no public utility easements recorded subsequent to the Mortgage and prior to the commencement of these proceedings affecting the Property.  *Id.* ¶ 51.

Based on the foregoing, Bravo requests that the Court:

1. Issue a judgement of foreclosure and sale in conformity with Title 14 § 6322, as affected by . . . [Ms.] Gauthier's[] discharge in bankruptcy, and accordingly, this action <u>does not</u> seek any personal liability on the part of the Defendant, but only seeks *in rem* judgment against the property;

2. Grant possession to the Plaintiff, U.S. Bank Trust [N.A.], not in its individual capacity, but solely as owner trustee of BRAVO Residential Funding Trust 2021-C, upon the expiration of the period of redemption;

3. Find that the Defendant . . . is in breach of the Note by failing to make payment due as of April 1, 2022, and all subsequent payments . . .;

4. Impose the applicable time periods for redemption, etc., as reflected in 14 M.R.S.[] § 6322;

5. Find that while the Defendant . . . has no personal liability in this matter, a Judgment of Foreclosure and Sale . . . can be imposed *in rem* against the [P]roperty . . .;

6. Determine the amounts due, if any, of parties that appear in this action as junior lienholders;

7. For such other and further relief as this Honorable Court deems just and equitable.

*Id.* at Prayer for Relief,  § C (numbers altered) (emphasis in original).

### 2. Margaret Gauthier's Motion for Judgment on the Pleadings or, Alternatively, to Dismiss

Ms. Gauthier moves the Court to dismiss the complaint filed against her based because she alleges Bravo lacks standing to brings its complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, Federal Rule of Civil Procedure 12(c). *Def.'s for Pleadings J. or Dismissal Mot.* at 4-9.

First, Ms. Gauthier argues that the case should be dismissed because Bravo has not complied with 14 M.R.S. § 6111. *Id.* at 4. Citing *Greenleaf*, she avers that there are eight elements of proof in a Maine foreclosure case:

1. Evidence of properly served notice of default and mortgagor's right to cure in compliance with the statutory requirements of 14 M.R.S. § 6111;

2. The existence of the mortgage, including the book and page number of the mortgage and an adequate description of the mortgaged premises, including the street address, if any;

3. Properly presented proof of ownership of the mortgage note and evidence of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage;

4. A breach of condition in the mortgage;

5. The amount due on the mortgage note, including any reasonable attorney fees and court costs;

6. The order of priority and any amounts that may be due to other parties in interest, including any public utility easements;

7. After January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules; and

21

8. If the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act.

*Id.* at 4-5 (citing *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700) (formatting altered) (capitalization altered) (citation amended).

Ms. Gauthier asserts that Bravo "clearly cannot demonstrate the third requirement" and thus has "not complied with all of the steps required by statute." *Id.* at 5 (citing *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700) (in turn citing *Chase Home Fin. LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508)) (citations amended). Further, Ms. Gauthier opines that the Maine Supreme Judicial Court has held that lenders, servicers, and their attorneys "must be meticulous when pursuing foreclosures," *id.* (citing *U.S. Bank Trust, N.A. v. Jones*, 2:16-cv-00617-JAW, 330 F. Supp. 3d 530, 537 (D. Me. 2018)) (citation amended), and has specifically established that "the only party with standing to foreclose is the party with the right to enforce the note." *Id.* (citing *Mortg. Elec. Registration Sys. v. Saunders*, 2010 ME 79, ¶ 12, 2 A.3d 289 (Me. 2010)) (citation amended). In *Saunders*, she posits, the Law Court held that the mortgagee did not have standing to foreclose because it did not hold or otherwise own the promissory note. *Id.* (citing *Saunders*, 2010 ME 79, ¶ 11 n.3, 2 A.3d 289 (in turn citing *Averill v. Cone*, 129 Me. 9, 11, 149 A. 297 (ME. 1930))) (citations amended). Ms. Gauthier reports that the Law Court extended this holding in *Greenleaf*, establishing that a mortgagor must demonstrate its possession of both the note and mortgage in order to establish its standing to foreclose. *Id.* at 6 (citing *Greenleaf*, 2014 ME 89, ¶ 12, 96 A.3d 700) (citation amended). Without both the note and mortgage, the

22

Defendant emphasizes, the Law Court held a mortgagor only has the "limited right to record, and nothing more." *Id.* (citing *Greenleaf*, 2014 ME 89, ¶ 14, 96 A.3d 700) (citation amended).  In these recent rulings, Ms. Gauthier opines that the Maine Law Court "departed from more than century-old Maine precedent that the mortgage 'follows' the note." *Id.* (citing *Wyman v. Porter*, 108 Me. 110, 119-20, 79 A. 371 (Me. 1911)) (citation amended).

Applying the *Greenleaf* standard to the instant case, Ms. Gauthier alleges that the June 2006 Assignment of Mortgage appended to Plaintiff's complaint as Attachment 8, *see LSRMF Assignment*, shows that "the mortgage at issue was assigned to MERS" and thus, all subsequent assignments conferred "only that limited right to record and nothing more" because the Mortgage did not follow the Note.  *Id.* at 7.

Ms. Gauthier next asserts that Plaintiff lacks standing pursuant to the April 29, 2022 Assignment of Mortgage appended to Plaintiff's complaint at Attachment 9, *see Bravo Mortg. Assignment*, which she alleges shows that the mortgage was assigned "not to Plaintiff, but to U.S. Bank Trust, as Trustee for LSRMF MH Master Participation Trust, by Select Portfolio Servicing Inc."  *Id.*  She thus claims Bravo is not the real party in interest to this dispute.

Ms. Gauthier says that the doctrine of standing "stems directly from Article III's 'case or controversy' requirement," *id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)) (citation amended) and that the Plaintiff, as the party invoking the Court's jurisdiction, bears the burden of establishing it has standing to pursue the claims

23

alleged in its complaint.  *Id.* at 8 (citing *Spokeo*, 578 U.S. at 338).  She states that standing requires a plaintiff establish: (1) an "injury in fact," which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) causation; and (3) redressability.  *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "If a court determines at any time that it lacks subject matter jurisdiction, [it] *must* dismiss the action."  *Id.* (citing FED. R. CIV. P. 12(h)(3)) (emphasis added by Defendant).

Ms. Gauthier next avers that "Plaintiff is not a licensed debt buyer."  *Id.* (capitalization altered).  She then says that "the court may not enter a judgment in favor of a debt buyer in a collection action against a consumer . . . unless the debt buyer files" a copy of the document evidencing the consumer's agreement to the debt and a copy of the bill of sale or other writing establishing that the debt buyer is the owner of the debt.  *Id.*

Returning to the issue of standing, Ms. Gauthier posits that, pursuant to *Greenleaf* and its progeny, "[n]o District Court in Maine will dare" find possession of a promissory note, on its own, is sufficient to create an ownership interest in the mortgage.  *Id.* at 9 (citing *U.S. Bank, N.A. v. Tuttle*, 2:19-cv-0280-JAW, 2019 U.S. Dist. LEXIS 216914 (D. Me. 2019)) (citation amended).  She reports that the Maine Law Court has concluded that "when a lender fails to comply with section 6111's [requirements], the lender lacks the right to accelerate the note balance or commence a foreclosure action . . ..  [and] when a lender lacks the right to accelerate the note, the note cannot be, and is not, accelerated . . . by the commencement of a foreclosure

action that the lender also lacks the right to commence." *Id.* (quoting *Finch v. U.S. Bank, N.A.*, 2024 ME 2, ¶ 6, 207 A.3d 1049) (quotation and citation both amended).

Here, she says, the Plaintiff has not demonstrated that it is the owner of the Mortgage and thus it does not have standing; accordingly, "Defendant is entitled to judgment on the pleadings and/or that this Plaintiff's lawsuit and foreclosure action must be dismissed." *Id.* Ms. Gauthier concludes that she "should be granted judgment on the pleadings in her favor" or "in the alternative, Plaintiff's complaint should be dismissed . . .. with prejudice" because Bravo has not followed the required steps according to § 6111. *Id.* at 9-10 (capitalization altered).

### 3.    Bravo's Opposition

Bravo asserts that Ms. Gauthier's motion should be denied as a meritless request for summary judgment, judgment on the pleadings, or, alternatively, dismissal. *Pl.'s Pleadings J. or Dismissal Opp'n* at 2. After arguing that summary judgment is not appropriate in the instant case "[b]ased upon the Complaint, the cursory denial filed by the Defendant, lack of Affirmative Defenses filed in Defendant's Answer and lack of either an affidavit(s) or a Statement of Material Fact," Bravo insists that Ms. Gauthier is also not entitled to judgment on the pleadings or dismissal. *Id.* Bravo says that a court reviewing a motion for judgment on the pleadings "should take as true all well-pleaded facts in the plaintiff's complaint and draw all reasonable inferences in favor of the Plaintiff" and "consider facts from any documents 'fairly incorporated' in the complaint." *Id.* (citing *Kando v. R.I. State Bd. of Elections*, 880 F.3d 76, 79 (1st Cir. 2018)). Turning to the case at bar, the

Plaintiff argues that "for a straightforward foreclosure and sale," *id.*, its well-pleaded complaint "alleges all of the facts required" for the Court to find in its favor. *Id.* Its complaint "also attaches all of the relevant documents, including, but not limited to, the Note and endorsement(s), the mortgage and all assignment(s), and the demand letter." *Id.*

Bravo rejects Ms. Gauthier's argument that it lacks standing. The Plaintiff states that, pursuant to 14 M.R.S. § 6321, at the commencement of this litigation it "painstakingly 'produce[d] evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage.'" *Id.* at 3 (citing *Compl.*, Attachs. 3-9). "Although some of the assignments are arguably not effective ([*Compl.*, Attachs. 4-6]), at this time, to transfer ownership of the mortgage, mortgage title has been transferred from the original lender." *Id.* (citing *JP Morgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, ¶ 2 n.2, 156 A.3d 727 (Me. 2017); *Nationstar Mortg., LLC v. Halfacre*, 2015 Me 97, 143 A.3d 136 (Me. 2016); *Carrington Mortg. Servs., LLC v. Brisley*, No. Aro-23-79, 2023 Me. Unpub. LEXIS 115 (Me. 2023)) (citations amended). Bravo argues further that the Quitclaim Assignment, *Quitclaim Assignment*, is "functionally, and legally, the transfer of the ownership of the subject mortgage." *Id.* at 3 n.1 (citing *Crooker v. Jewell*, 31 Me. 306, 313 (1850) (finding that a quitclaim assignment constitutes a valid and effective assignment). Thus, Bravo avers, it has established its standing to bring the present suit. *Id.* at 3.

Turning to Ms. Gauthier's argument regarding debt collection, Bravo contends that Ms. Gauthier's assertion that U.S. Bank is a "debt collector" or a "debt buyer" is

unsupported by law. *Id.* at 4. These terms are defined by Maine statute, it says, and none is applicable to U.S. Bank. *Id.* First, Bravo says, the Maine Fair Debt Collection Act, 32 M.R.S. § 11003(1), notes an exemption for "[a]ny officer or employee of a creditor, while, in the name of the creditor, collecting debts for that creditor." *Id.* (citing 32 M.R.S. § 11003(1); 15 U.S.C. §§ 1692a(6)(A)). As U.S. Bank is acting as a creditor and collecting this debt for itself through an *in rem* action, rather than as a debt collector on behalf of a third party, Bravo argues that it is exempt from both the Maine and federal versions of the Fair Debt Collection Act. *Id.* (citing *Bank of America v. Camire*, 2017 ME 20, ¶¶ 12-16, 155 A.3d 416 (Me. 2017)) (citation amended). Second, Bravo says there is no evidence before the Court that U.S. Bank is a "debt buyer" as defined by 32 M.R.S. § 11002(5-A). Plaintiff points out that the mortgage that U.S. Bank seeks to enforce is not resolved debt since the mortgage rights it holds are fully enforceable, and, in addition, its status as a National Association under the supervision of the Comptroller of the Currency exempts it from being a "debt buyer" because that definition specifically "does not include a supervised financial organization as defined in Title 9-A, § 1-301(38-A)." *Id.* (citing 12 U.S.C. § 1 *et seq.*; 12 U.S.C. § 1561 *et seq.*).

Bravo concludes that, pursuant to 14 M.R.S. § 6322 and caselaw, it has pleaded each of the applicable elements of foreclosure and sale: (1) the existence of the Mortgage; (2) properly presented proof of ownership of the LRSA and Mortgage; (3) a breach of a condition in the Mortgage; (4) the amount due on the LRSA, including any reasonable attorney's fees and court costs; (5) the order of priority and any amounts

that may be due to other parties-in-interest, including any public utility easements; (6) evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements,[4] and/or the LRSA and Mortgage, including notice of the availability of mediation; and (7) that the Defendant is not in military service in accordance with the Servicemembers Civil Relief Act, 50 U.S.C.S. App § 521. *Id.* at 4-5 (collecting cases).  Bravo asserts that the Maine courts have declined to expand these requirements.  *Id.* at 5 (citing *Deutsche Bank v. Clifford*, 2021 ME 11, 246 A.3d 597 (Feb. 25, 2021) (declining to find that sending notice of the foreclosure to the Maine Bureau of Consumer Credit Protection was an element of proof necessary for a foreclosure judgment)).

Finally, Bravo raises its confusion regarding the kind of motion Ms. Gauthier submits, asserting she "has filed what appears to be a joint motion for summary judgment and a motion to dismiss." *Id.* at 6.  Insofar as the motion is a request for summary judgment, Bravo says it is "[c]ompletely unsupported by affidavit or statement of material facts and should be denied simply on that basis." *Id.*  In addition, if the motion is to be construed as a request for judgment on the pleadings, the Plaintiff says it "ignores the basic requirement that all of the allegations in the Complaint and the related exhibits, etc. must be accepted as true and simply stating that certain allegations 'are not true' does not . . . meet the criteria." *Id.*  Moreover,

---

[4]    Plaintiff additionally notes that while notice compliant with the statute was sent to Ms. Gauthier, 14 M.R.S. § 6111 "only applies when the property at issue is the 'principal residence' of the debtor [and] Ms. Gauthier's principal residence is California." *Pl.'s Judgment P. or Dismissal Opp'n* at 2.

Bravo asserts that Ms. Gauthier has waived these issues because she did not raise them in her answer. *Id.*

### 4.   Margaret Gauthier's Reply

Ms. Gauthier's reply restates the arguments raised in her motion. She says, first, that Bravo lacks standing to seek a judgment of foreclosure and sale in the instant case because it is not the "true holder" of the Mortgage; U.S. Bank Trust, as Trustee for LSRMF MH Master Participation Trust, by Select Portfolio Servicing, Inc. is the "would-be assignee" and thus Plaintiff, by its own admission and exhibits, lacks standing. *Def.'s Pleadings J. or Dismissal Reply* at 2 (citing *Bravo Mortg. Assignment*).

Next, the Defendant turns to Bravo's response that it is not a "debt buyer" or a "debt collector." She acknowledges "that it is perhaps true that U.S. Bank, National Association, in and of itself, is not a debt buyer," *id.* at 2, "but Plaintiff wrongfully states that it is not a debt buyer" because "the entity U.S. BANK TRUST NATIONAL ASSOCIATION, not in its individual capacity, but solely as owner trustee of BRAVO Residential Funding Trust 2021-C . . . **is a debt buyer** . . .. [a]nd . . . is not licensed as such." *Id.* at 3 (emphasis in original). Further, she says, "[t]he Mortgage that Plaintiff seeks to enforce is a resolved debt because the mortgage rights Plaintiff claims it holds are simply nonexistent." *Id.* On this point, the Defendant additionally avers that a debt buyer is obligated to follow certain rules and regulations pursuant to the Federal Debt Consumer Protection Act (FDCPA), *id.*, which Plaintiff failed to do in this action. *Id.* at 4.

Ms. Gauthier concludes with a return to her arguments regarding standing. Responding to the Plaintiffs assertion that the Quitclaim Assignment resolved the issues of title, Ms. Gauthier says the assignment "show[s] that Residential Mortgage Services, Inc., [Residential] the lender on the original mortgage, assigned and conveyed its rights to [MERS]." *Id.* at 5. This, she says, is ineffective to transfer an interest in a mortgage. *Id.* (citing *Greenleaf*, 2014 ME 89, ¶¶ 14-17, 96 A.3d 700) (citation amended). She asserts that "*Greenleaf* . . . substantially impacted residential foreclosure mortgages in Maine because thereafter courts have routinely held that a MERS assignment in the chain of title defeats the foreclosing entity's standing to foreclose" and "[t]he practical impact . . . is that the note holder loses the right to enforce[] the mortgage." *Id.* In sum, she says, "[Attach. 7] **did not** and **could not** legally effectuate the assignment of a mortgage to anyone at anytime." *Id.* (emphasis in original).

In the remainder of Ms. Gauthier's reply, she recites verbatim the legal arguments raised in her initial motion. *See id.* at 6-11.

### C.     The Rule 12(b)(1) Motion to Dismiss

Ms. Gauthier brings her motion under Rule 12(b)(1) or, alternatively, Rule 12(c). As the Court must dismiss the action if it "determines at any time that it lacks subject-matter jurisdiction," FED. R. CIV. P. 12(h)(3), the Court reviews the merits of Ms. Gauthier's motion pursuant to Rule 12(b)(1) first.

### 1. Legal Standard for Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

"A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (internal citation omitted). "The burden falls on the plaintiff to clearly allege facts demonstrating that he is a proper party to invoke federal jurisdiction." *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996) (citation and internal quotation marks omitted); *see, accord, Me. Council of the Alt. Salmon Fed'n v. Nat'l Marine Fisheries Serv. of the Nat'l Oceanic Atmospheric Admin.*, 203 F. Supp. 3d 58, 75 (D. Me. 2016) ("The plaintiff, as the party asserting subject matter jurisdiction, has the burden of demonstrating its existence."); *Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 33-34 (1st Cir. 2012) (same). In ruling on a Rule 12(b)(1) motion, the Court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996). "If the court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." FED. R. CIV. P. 12(h)(3).

### 2. Analysis of Motion to Dismiss Pursuant to Rule 12(b)(1)

In ruling on this motion, the Court considered the allegations in the complaint, as well as the attachments to the Plaintiff's complaint. *See Compl.*; *Compl.*, Attachs. 1-12. *See also Aversa*, 99 F.3d at 1209-10 ("In ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court must construe the

complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case") (citations omitted).

The crux of Ms. Gauthier's argument is that Bravo lacks standing to seek a judgment of foreclosure and sale "because it failed to present proof of possession and ownership of mortgage note required for compliance with Maine Title 14." *Def.'s Pleadings J. or Dismissal Mot.* at 4. Specifically, she avers that Bravo failed to comply with the requirement in 14 M.R.S. § 6111 that foreclosure requires "properly presented proof of ownership of the mortgage note and evidence of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage." *Id.* at 4-5 (citing *Greenleaf*, 2014 ME 89, 96 A.3d 700). She asserts that Attachment 8 to Plaintiff's complaint shows "the mortgage at issue was assigned to MERS in June of 2006" and thus "all subsequent assignments assigned only that limited right to record and nothing more." *Id.* at 7. She analogizes her case to *Greenleaf*, in which the Maine Law Court held that the plaintiff lacked standing to seek foreclosure because it had acquired its interest in the mortgage from "MERS— a nominee that possessed no interest in the mortgage other than the right to record it." *Id.* at 6 (citing *Greenleaf*, 2014 ME 89, ¶ 14, 96 A.3d 700) (citation amended).

Here, Bravo, as Plaintiff, bears the burden of establishing standing. *See Lujan*, 504 U.S. at 561 (standing); *R.I. Ass'n of Relators v. Whitehouse*, 199 F.3d 26, 30, 31 (1st Cir. 1999) ("The burden of establishing standing rests with the party who invokes

federal jurisdiction . . .. the plaintiff must adduce facts sufficient to establish both fitness and hardship").   To establish standing, the plaintiff bears the burden of showing: (1) "a concrete and particularized injury in fact"; (2) "a causal connection that permits tracing the claimed injury to the defendant's actions"; (3) "a likelihood that prevailing in the action will afford some redress for the injury."  *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt.*, 589 F.3d 458, 467 (1st Cir. 2009) (quoting *City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 92 (1st Cir. 2008)).   Bravo asserts that it has standing, pointing to the assignments it attached to its complaint and specifically to the Quitclaim Assignment included as Attachment 7.   *Pl.'s Pleadings J. or Dismissal Opp'n* at 1; *Bravo Mortg. Assignment.*

Ms. Gauthier is correct that the Maine Law Court in *Greenleaf* held that a judgment of foreclosure should not have been entered for a bank in that case because the bank lacked standing to seek foreclosure, as it only established that it possessed the promissory note and failed to prove it also owned the mortgage.  *Greenleaf*, 2014 ME 89, ¶¶ 12, 17, 96 A.3d 700.  The *Greenleaf* Court concluded that the assignments offered by the bank as proof of its right to foreclose against the Defendant demonstrated only "the right to record the mortgage as nominee, but no more" and "[i]n the absence of any evidence that the Bank owned Greenleaf's mortgage," the Bank lacked standing to seek foreclosure.  *Id.* ¶ 17.

The Court's task, then, is to determine whether Bravo, the entity seeking to foreclose on the property at issue, has sufficiently demonstrated ownership of the underlying Mortgage and that it holds, possesses, or owns the Note.  In its complaint,

Bravo alleges that it is the "current owner and investor of the aforementioned Mortgage and Note." *Compl.* ¶ 48. Although a court ruling on a Rule 12(b)(1) motion "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff," *Aversa*, 99 F.3d at 1209-10, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court thus looks to the assignments attached by Bravo to its complaint in support of its allegations regarding chain of title.

These assignments show that Residential Mortgage Services is the original owner of both the Note and Mortgage. *Note*; *MERS Mortg.* Over a decade later, Residential conveyed and assigned "any [and] all rights it had under the Mortgage" to FNMA through a Quitclaim Assignment, at which point FNMA became the owner of the Mortgage. *Quitclaim Assignment*.

A few years later, FNMA conveyed, granted, assigned, transferred, and set over the Mortgage "with all interest secured thereby, all liens, and any rights due or to become due thereon" to U.S. Bank Trust, as trustee for LSRMF, a private equity fund. *LSRMF Assignment*. LSRMF accordingly became the owner of the Mortgage.

Nearly two years later, through a corporate assignment, U.S. Bank Trust, as trustee for LSRMF, assigned its mortgage to U.S. Bank Trust, as owner trustee of Bravo Residential Funding Trust. *Bravo Mortg. Assignment*. At this time, Bravo became the owner of the Mortgage. The Court thus concludes that Bravo meets the mortgage part of the standing analysis.

However, as the Defendant correctly points out, *Greenleaf* also requires the party seeking foreclosure to show they it holds, possesses, or owns the note, in addition to the mortgage. *Greenleaf*, 2014 ME 89, ¶ 12, 96 A.3d 700. First, the Court notes that Bravo in its complaint avers that it is the current owner of the Note. *Compl.* ¶ 48. Second, the Court recently addressed the veracity of this allegation when it required Bravo to produce ownership of the Note, *Order to Produce*, and, in compliance, Attorney Longoria filed an affidavit in which she averred that her law office was holding the note in its locked, secure, and fireproof cabinets. *Aff. of Note Holder* at 2. In response to Attorney Longoria's report that on July 3, 2024, UMB Bank had acquired ownership of the note effective May 31, 2024, the Court ordered Attorney Longoria to file a subsequent affidavit explaining why there has been a delay in coordinating her receipt of the assigned mortgage and when she expected this would be rectified, *Order to Clarify* at 2; when she did so, *Clarify Aff.*, the Court deemed the order to clarify satisfied. *Order on Clarify Order.*

In ruling on a 12(b)(1) motion to dismiss, the Court is permitted to consider "whatever evidence has been submitted, such as the depositions and exhibits submitted in this case." *Aversa*, 99 F.3d at 1209-10. Thus, the Court may consider Attorney Longoria's affidavits in determining whether Bravo is the present holder of the Note. However, even if the Court were to confine its inquiry to the complaint and its attachments, the First Circuit's instruction to "construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff," *id.*, would also lead the Court to the same conclusion. Bravo avers

in its complaint that it is the present holder of the Note and Mortgage, *Compl.* ¶ 48, and its attachment of the Note to its complaint, *see Note*, supports this allegation. A note is a negotiable interest, so a plaintiff that "merely holds or possesses—but does not necessarily own—the note satisfies the note portion of the standing analysis." *Greenleaf*, 2014 ME 89, ¶ 12, 96 A.3d 700.

Because Bravo has demonstrated sufficient facts for the Court to reasonably infer that it was the holder of both the Note and Mortgage when it sought judgement of foreclosure and sale against the Property, the Court concludes that Bravo has standing to bring this action pursuant to *Greenleaf*.

Having determined Ms. Gauthier's motion does not succeed pursuant to Rule 12(b)(1), the Court proceeds to consider whether the motion is alternatively successful pursuant to Rule 12(c).

### D.    The Rule 12(c) Motion for Judgment on the Pleadings

#### 1.    Legal Standard for Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). In evaluating a motion for judgment on the pleadings, the court views "all well-pleaded facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 140 (1st Cir. 2016). The standard for resolving a motion for judgment on the pleadings under Rule 12(c) is effectively identical to that applicable

36

to a motion to dismiss brought under Federal Civil Procedure Rule 12(b)(6).  *See Villeneuve v. Avon Prods., Inc.*, 919 F.3d 40, 43 n.2 (1st Cir. 2019) ("A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss") (quoting *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)).  However, unlike a Rule 12(b)(6) motion, a Rule 12(c) motion implicates the allegations of all the pleadings, rather than only those of the complaint.  *See Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2006) ("A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole").

### 2.   Analysis of Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)

Ms. Gauthier styles her submission as a motion for judgment on the pleadings or, alternatively, a 12(b)(1) motion to dismiss.  However, she submits one argument pursuant to both standards: the Court should dismiss the complaint against her because Bravo lacks standing in accordance with *Greenleaf*.  Having already concluded that Bravo has established standing for the purposes of Rule 12(b)(1), the Court also concludes that Bravo has pleaded sufficient facts to survive the Rule 12(c) motion for judgment on the pleadings for lack of standing.

In issuing an order on a motion for judgment on the pleadings pursuant to Rule 12(c), the Court is instructed to consider "the pleadings as a whole," *Aponte-Torres*, 445 F.3d at 54-55, and view "all well-pleaded facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Najas Realty*, 821 F.3d at 140.  As the Court has concluded that Bravo has met its burden

37

sufficient to survive a 12(b)(1) motion based on the complaint and its attached assignments, the Court finds the same is true for a 12(c) attack.

The Court accordingly dismisses the motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### E.    Conclusion

The Court DISMISSES without prejudice Defendant Margaret Gauthier's [Motion] for Judgment as a Matter of Law, or Motion to Dismiss Plaintiff's Complaint (ECF No. 9).

## III.   THE MAGISTRATE JUDGE'S RECOMMENDED DECISION ON THE MOTION TO APPOINT RECEIVER

### A.    The Magistrate Judge's Recommended Decision

The Magistrate Judge reviewed Bravo's March 25, 2024 motion to appoint Benjamin P. Campo, Jr., Esq. as receiver for the property that is the subject of this foreclosure action, *Mot. to Appoint Receiver*, and subsequently filed her Recommended Decision with the Court on May 3, 2024. *Recommended Decision*.

After relaying that the Court has the equitable power to appoint a receiver, and that exercising this power lies within the Court's discretion, *Recommended Decision* at 2, the Magistrate Judge synthesizes the parties' positions.  Bravo argues the Court should grant its motion to appoint a receiver because the Property is an investment rental; "Gauthier lives out of state and is receiving the rent proceeds without making mortgage payments or footing the bills for taxes and insurance"; Bravo having spent over $8,000 for taxes and insurance without receiving any rent proceeds; Ms. Gauthier not being liable given her Chapter 7 bankruptcy discharge;

and one of the rental units being vacant, depriving Bravo of rental payments to defray the property's costs. *Id.* at 4. In opposition, Ms. Gauthier claims that Bravo "lacks standing to bring this case and is not the real party in interest and that the appointment of a receiver is both unnecessary and premature." *Id.* at 5.

Regarding standing, the Magistrate Judge found there is no issue because after Residential, the original lender and entity holding Ms. Gauthier's note, executed a Quitclaim Assignment on April 27, 2017 conveying its rights to FNMA, which held the mortgage at the time, FNMA gained a full bundle of rights, which it then assigned to Bravo. *Id.*

The Magistrate Judge then concluded that the appointment of a receiver was "warranted on several bases: that BRAVO has a contractual right to appoint a receiver and collect rent, is likely to succeed on the merits of its claim, has shown ongoing harm to its protectible interest in the Property, and has no adequate alternative remedy to redress that harm." *Id.* at 7.

## B.  The Parties' Positions

### 1.  Margaret Gauthier's Objections to the Recommended Decision

Ms. Gauthier argues that "the extraordinary and drastic remedy of appointing a receiver is not warranted by the facts of this case . . . nor by existing law." *Def.'s Recommended Decision Obj.* at 1. She adds that a receiver "**should not** be appointed because Plaintiff will not be able to prevail on the merits of its foreclosure action." *Id.* (emphasis in original).

39

In addition, the Defendant takes issue with the conclusion in the Recommended Decision that Residential's Quitclaim Assignment to FNMA on April 27, 2017 resolved the *Greenleaf* problem. *Id.* at 3-4 (discussing *Greenleaf*, 2014 ME 89, 96 A.3d 700). Ms. Gauthier asserts that "Residential **did not** own any rights under the mortgage **when it executed that Quitclaim Assignment**." *Id.* at 4 (emphasis in original). She proceeds to walk through a timeline of the Note being transferred, in an attempt to show that the Mortgage and Note were bifurcated, rendering future transfers a nullity with no legal effect. *Id.* at 4-6 (citing *Carpenter v. Longan*, 83 U.S. 271 (1872)) for the proposition that separating a mortgage and a note is improper). The Defendant avers that "[t]he use of nominees, or third parties to hold, or record a mortgage, when the mortgagee retains possession of the note, splits the mortgage and note and conflicts with the decision in *Longan*." *Id.* at 7.

Based on the foregoing, Ms. Gauthier contends that Bravo lacks standing because it is unable to demonstrate ownership of both the Mortgage and the Note pursuant to *Greenleaf*. *Id.* at 10-11 (citing *Quinn*, 2019 U.S. Dist. LEXIS 212661; *Homeward Residential Inc. v. Gregor*, 2015 ME 108, 122 A.3d 947). Ms. Gauthier concludes that the Court lacks subject matter jurisdiction over this case and, thus, does not have the authority to appoint a receiver. *Id.* at 14-16.

### 2. Bravo's Response

Bravo responds that "[a] person or entity may be 'entitled to enforce the instrument even though the person is not the owner of the instrument.'" *Pl.'s Recommended Decision Resp.* at 2 (citing 11 M.R.S. § 3-1301(3)). Therefore, Bravo argues, "[a] holder of the Note, as defined as a person or entity entitled to pursue an

instrument pursuant to 11 M.R.S. § 3-1301, has standing to initiate, pursue and prevail in a foreclosure action." *Id.* Bravo argues that since it holds the Note through its agent, and the Note has "clearly been endorsed from the original lender," ultimately to "blank," that is sufficient to allow it to enforce the Note. *Id.* (citing *Saunders*, 2010 ME 79, ¶ 12, 2 A.3d 289; and *Deutsche Bank Nat'l Trust Co. v. Wilk*, 2013 ME 79, 76 A.3d 363).

In addition, Bravo offers that the "assignment is valid since it was from the original lender, has been recorded more than two years," and recites the requisite succession of interest. *Id.* at 3. Therefore, Bravo argues, that assignment transfers the Mortgage title interest. *Id.* (citing *U.S. Bank v. Gordon*, 2020 ME 33, ¶ 8, 227 A.3d 577; and *Nationstar Mortg., LLC v. Halfacre*, 2015 ME 97, 143 A.3d 136). Bravo avers that "[i]n this case, the Plaintiff 'has both possession of the Note endorsed in blank and ownership over the Mortgage," such that it has "standing to foreclose." *Id.* (quoting *Greenleaf*, 2014 ME 89, ¶ 9, 96 A.3d 700).

Bravo then discusses the *Erie*[5] doctrine to argue that "the case cited by Defendant in support of her Opposition (*Carpenter v. Longan*, 83 U.S. 271 (1872)[)], which was interpreting Colorado territorial law or federal common law, is inapplicable since it was not interpreting Maine real estate law." *Id.* at 3-4 (citation omitted).

---

[5]     *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

###    3.    Margaret Gauthier's Reply

Ms. Gauthier contends that "Plaintiff's Response fails to address the fundamental defects in its foreclosure case that [she] identified in her Objection." *Def.'s Recommended Decision Reply* at 1.  She says that "[i]nstead of engaging with the merits of Ms. Gauthier's thoroughly documented arguments regarding the repeated separations of the mortgage and note, Plaintiff resorts to mischaracterizing her Objection and attacking her *pro se* status."  *Id.*

The remainder of Ms. Gauthier's reply largely reiterates her previous arguments.  She insists the "U.S. Supreme Court has long recognized that a mortgage and note are inseparable, and an assignment of the mortgage alone, without the note is a nullity."  *Id.* at 2.  By her estimation, this principle is a "fundamental tenet of mortgage law that has been applied by courts across jurisdictions," including by the Maine Supreme Judicial Court in *Greenleaf.  Id.* at 3.  She then repeats her argument that "a foreclosure plaintiff must establish an unbroken chain of assignments of both the mortgage and note to demonstrate standing."  *Id.* at 3 (citing *U.S. Bank Trust, N.A. v. Jones*, 925 F.3d 534, 539 (1st Cir. 2019)).  Additionally, she says her documentation shows "repeated separations of the mortgage and note through a series of invalid assignments," which she argues deprive Bravo of standing to foreclose.  *Id.*

Ms. Gauthier then says, "a quitclaim deed is insufficient to establish standing where there are defects in the underlying assignments."  *Id.* at 4.  As such, she

believes that Bravo's "attempt to paper over the clear gaps in its chain of mortgage assignments with a purported quitclaim deed is unavailing." *Id.*

Finally, Ms. Gauthier argues that Bravo's "invocation of the *Erie* doctrine is entirely misplaced." *Id.* at 7. She advances that "*Erie* provides no support for Plaintiff's position; if anything, it confirms . . . Maine law governs the standing inquiry here. And as detailed above, Maine law could not be clearer that a foreclosure plaintiff must establish a complete chain of title for both the note and the mortgage to have standing." *Id.*

## C.    Discussion

As the Court noted in its Order to Produce, to foreclose on a property in Maine, the plaintiff must prove an interest in both the note and mortgage. *Greenleaf*, 2014 ME 89, ¶ 12, 96 A.3d 700. A note is a negotiable interest, so a plaintiff that "merely holds or possesses—but does not necessarily own—the note satisfies the note portion of the standing analysis." *Id.* "Unlike a note, a mortgage is not a negotiable instrument," therefore "the mortgage portion of the standing analysis requires the plaintiff to establish *ownership* of the mortgage." *Id.* (emphasis in original).

The Court's order to produce discussed the Magistrate Judge's Recommended Decision at length and stated the Court's conclusions that the record established Bravo held the Mortgage but was unclear on whether Bravo held the Note. *Order to Produce* at 2, 9. The Court delayed ruling on the Recommended Decision to allow Bravo to demonstrate it was in possession of the Note, in accordance with *Greenleaf* and its progeny. *Id.* at 9. As previously discussed in this omnibus order, the Court

43

subsequently determined that Bravo was in possession of the Note. *Order on Clarify Order*.

The Court delayed ruling on whether it would accept the Magistrate Judge's Recommended Decision until Bravo complied with its Order to Produce and, then, its Order to Clarify. *Order to Produce* at 2. Now that the Order to Clarify has been satisfied, the Court adopts the Magistrate Judge's Recommended Decision in full and, in accordance, grants Bravo's motion to appoint Benjamin P. Campo, Esq. as receiver for the Property.

### D.   Conclusion

The Court AFFIRMS the Magistrate Judge's Recommended Decision on Motion to Appoint Receiver (ECF No. 16), GRANTS Bravo's Motion to Appoint Receiver (ECF No. 12), and hereby APPOINTS Benjamin P. Campo, Jr., Esq. as receiver for the real property located at 14-16 Melvin Avenue, Old Orchard Beach, Maine 04064 with powers to determine legal occupancy status, make necessary repairs and maintenance expenditures for the overall preservation of the Property, and collect monthly rental payments from the tenants to be allocated toward expenses for maintenance, property insurance, and property taxes.

## IV.   DEFENDANT'S OMNIBUS OBJECTIONS TO THE COURT'S ORDER DEEMING THE ORDER TO CLARIFY RESOLVED

### A.   The Court's Order Deeming the Order to Clarify Resolved

As previously discussed, on July 23, 2024, the Court ordered Bravo to produce evidence that it held the promissory Note and Mortgage and thus had standing to seek a judgment of foreclosure. *Order to Produce* at 1. In compliance, Attorney

Longoria filed an affidavit stating that her law office was securely holding the Note, and that the last assignment of the Mortgage had been to U.S. Bank. *Order to Clarify* at 2 (citing *Aff. of Note Holder* at 2). However, Attorney Longoria also informed the Court that on July 3, 2023, UMB Bank had acquired ownership of the Note effective May 31, 2024. *Id.* (citing *Aff. of Note Holder* at 2).

In its order to clarify, the Court explained its understanding that "during the pendency of this foreclosure, US Bank assigned its note and mortgage to UMB Bank, and although Attorney Longoria has represented that the assignment of the note is effective, her receipt of the assignment of the mortgage has not yet caught up to the assignment of the note." *Id.* The Court said, "[u]ltimately, to foreclose on the property at issue, the mortgagee must show it holds an interest in both the mortgage and the note." *Id.* The Court thus ordered Attorney Longoria to file a supplemental affidavit within two weeks, *id.* at 2-3, which she did on August 21, 2024. *Clarify Aff.* On August 22, 2024, the Court deemed the order to clarify resolved. *Order on Clarify Order.*

**B.    The Parties' Positions**

**1.    Margaret Gauthier's Motion for Reconsideration and Objection to Order Deeming the Order to Clarify Resolved**

Ms. Gauthier moves the Court to reconsider its order deeming the order to clarify resolved by Attorney Longoria's affidavit. *Def.'s Obj. to Resolved Clarification Order* at 1. The Defendant asserts that her "motion is necessitated by the Court's premature resolution of critical issues without addressing the fundamental problem of U.S. Bank's failure to produce the original note, a requirement for both standing

45

and jurisdiction under Maine law." *Id.* (cleaned up). She argues that Attorney Longoria's affidavit "does not resolve [this] fundamental issue," which concerns the Defendant in light of "[t]he troubling pattern of potentially improper actions" she identifies in "[t]he history of assignments related to [her] mortgage." *Id.* at 2. Ms. Gauthier proffers that "[t]his pattern of assignments, each coinciding with foreclosure attempts or responses to legal challenges, strongly suggests a systemic effort to retroactively create standing where none existed." *Id.* Restating her allegation that Bravo has failed to comply with *Greenleaf*, Ms. Gauthier contends "the Court has overlooked a critical legal requirement under Maine law" by deeming the matter resolved solely by Attorney Longoria's affidavit. *Id.*

Further, Ms. Gauthier opines that the Court's "premature resolution" deprives her of her due process rights to challenge Bravo's standing and to require strict compliance with Maine's foreclosure laws. *Id.* at 3 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). She argues that the Court's acceptance of Attorney Longoria's affidavit "without allowing Ms. Gauthier to challenge its contents or cross-examine Attorney Longoria" violates the due process rights the Supreme Court recognized in *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970)). *Id.* at 4.

The Defendant informs the Court that she has filed several documents addressing these issues in detail, including a motion to strike, a supplemental brief, a motion to compel, and an affidavit, which "collectively demonstrate that: a) [t]he chain of title for the note and mortgage is broken and unclear; b) [t]here are unexplained gaps and contradictory transfer dates; c) [t]he alleged original note bears

46

questionable endorsement and stamps added years after purported transfers; d) U.S. Bank has failed to produce the original note as ordered by this Court; e) Ms. Gauthier has no recollection of the alleged 2020 loan modification." *Id.* at 3.

### 2.    Bravo's Opposition

Bravo opposes Ms. Gauthier's motion for reconsideration. *Pl.'s Opp'n. to Def.'s Obj. to Revised Clarification Order* at 1. The Plaintiff argues that Ms. Gauthier "has been provided with ample assurances that the undersigned Counsel possesses the Note on behalf of the Plaintiff," and, "[g]enerally, the original Note is produced at the time of trial for review of the Court." *Id.* Here, Attorney Longoria filed a sworn statement that she is in possession of the original Note and that she will bring the same to trial, or to the Court for review in advance of trial. *Id.*

Bravo urges the Court to dismiss Ms. Gauthier's motion for reconsideration and schedule a status conference to allow the Defendant to view the Note and resolve any pending motions so that this matter may proceed to trial. *Id.* at 2.

### C.    Discussion

#### 1.    The Motion for Reconsideration

The Court dismisses Ms. Gauthier's motion for reconsideration of the Court's order deeming the Order to Clarify resolved because she failed to demonstrate that the order contains a manifest error of law or fact. D. ME. LOC. R. 7(f).

The Court first turns to a procedural issue. Although Ms. Gauthier titled her motion a motion for reconsideration, she does not identify under what rule she brings her motion. The order deeming the order to clarify resolved was not a "final judgment" because it did not resolve all the claims by all the parties in this suit. *See*

*Riley v. Kennedy*, 553 U.S. 406, 419 (2008) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A final judgment is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment") (internal quotation marks omitted)).  As a result, Ms. Gauthier's motion cannot be brought under either Federal Rules of Civil Procedure 59(e) or 60 because the order deeming the order to clarify resolved was not a final judgment, and the Court has not directed entry of a final judgment on any claims pursuant to Federal Rule of Civil Procedure 54(b).  *See Barrows v. Resolution Trust Corp.*, 39 F.3d 1166, at *3 (1st Cir. 1994) (table opinion) (Rule 59(e) "applies only to final judgments"); *Farr Man & Co. v. M/V Rozita*, 903 F.2d 871, 874 (1st Cir. 1990) ("Rule 60 applies only to final judgments"); *Widi v. McNeil*, No. 2:12–cv–00188–JAW, 2014 WL 4987969, *5 (D. Me. Oct. 7, 2014).

Ms. Gauthier's motion must fall under the District of Maine's Local Rule 7:

> A motion to reconsider an interlocutory order of the Court, meaning a motion other than one governed by Fed. R. Civ. P. 59 or 60, shall demonstrate that the order was based on a manifest error of fact or law and shall be filed within 14 days from the date of the order unless the party seeking a reconsideration shows cause for not filing within that time.

D. ME. LOC. R. 7(f).  The Court issued its order deeming the order to clarify resolved on August 22, 2024, *Order on Clarify Order*, and Ms. Gauthier filed her motion for reconsideration on August 26, 2024, *Def.'s Obj. to Resolved Clarification Order*.  Ms. Gauthier's motion was timely filed and the Court now turns to the merits of her motion for reconsideration.

The Court dismisses Ms. Gauthier's motion because she has not shown that the order deeming the order to clarify resolved was based on a manifest error of fact

or law.  D. ME. LOC. R. 7(f).  In essence, Ms. Gauthier's motion for reconsideration petitions the Court to conduct a trial in advance of trial, in order to address the pending *Greenleaf* questions.  As the Government points out, this request is premature, as Ms. Gauthier "has been provided with ample assurances that the undersigned Counsel possesses the Note on behalf of the Plaintiff," and, "[g]enerally, the original Note is produced at the time of trial for review of the Court."  *Pl.'s Opp'n. to Def.'s Obj. to Revised Clarification Order* at 1.

The order deeming the order to clarify resolved did not absolve Attorney Longoria of her obligations pursuant to *Greenleaf*.  Rather, it indicated the Court's conclusion that Attorney Longoria has satisfied her obligations in advance of trial.  This was a preliminary determination; Bravo and its counsel will still be required to comply with *Greenleaf* at trial.  There has been no manifest error of fact or law.  To require Bravo to produce the original Note and Mortgage now would be both premature and repetitious, as the same procedure will take place at trial in accordance with Maine Law Court precedent.

## 2.    Other Motions Regarding the Order to Clarify

As Ms. Gauthier flagged for the Court in Defendant's Motion for Reconsideration and Objection to Court's Order Deeming the Order to Clarify Resolved, she has submitted numerous additional motions to this Court raising similar objections to the substance of the order deeming its order to clarify resolved.  *See Def.'s Obj. to Resolved Clarification Order* at 3.  By the Court's count, these include:

49

1.      Defendant Margaret Gauthier's Request for Judicial Notice (ECF No. 18)

2.      Defendant Margaret Gauthier's Motion to Strike and Objection to Admission of Alleged "Original" Promissory Note (ECF No. 29)

3.      Defendant's Request for Judicial Notice (ECF No. 30)

4.      Defendant Margaret Gauthier's Motion to Strike and Objection to Admission of Alleged "Original" Promissory Note (ECF No. 39)

5.      Defendant Margaret Gauthier's Motion to Compel Production of the Original Note (ECF No. 40)

6.      Objection to Court's Order Deeming the Order to Clarify Resolved (ECF No. 42)

7.      Defendant Margaret Gauthier's Motion for Forensic Examination of Promissory Note and Mortgage (ECF No. 56)

8.      Defendant Margaret Gauthier's Motion to Compel Discovery (ECF No. 63)

The Court now dismisses these pending motions as premature because, as discussed, Bravo has fulfilled its obligations to establish it has standing to seek judgment of foreclosure and sale as to the Property ahead of trial.

For the same reason, the Court dismisses Bravo's Motion to Schedule a Status Conference for the Purpose of Presenting the Original Promissory Note and to Address any Unresolved Issues and/or Claims Pertaining to the Original Promissory Note (ECF No. 45). The Court appreciates Bravo's desire to address Ms. Gauthier's concerns regarding the Note but concludes that this matter will be more efficiently addressed in full at the upcoming trial.

As the Court has concluded, now multiple times, that Bravo has complied with its pre-trial obligations regarding the promissory Note and Mortgage, the Court also

dismisses Defendant Margaret Gauthier's Motion for Sanctions Against Plaintiff and Plaintiff's Counsel (ECF No. 54) (*Mot. for Sanctions*).   Ms. Gauthier's motion for sanctions is based on allegations that "Plaintiff has proffered multiple inconsistent versions of the purported 'original' promissory note, none of which can be trusted as authentic," which she suspects "strongly suggests an attempt to perpetrate a fraud on this Court." *Mot. for Sanctions* at 1-2.   The Court has already concluded Bravo satisfied the order to clarify. *Order on Clarify Order*.   As the basis for Ms. Gauthier's sanctions motion has already been resolved, the Court dismisses the motion for sanctions as meritless and moot.

### D.   Conclusion

The Court DISMISSES Ms. Gauthier's Motion for Reconsideration and Objection to Court's Order Deeming the Order to Clarify Resolved (ECF No. 41).   It also DISMISSES Defendant Margaret Gauthier's Request for Judicial Notice (ECF No. 18); Defendant Margaret Gauthier's Motion to Strike and Objection to Admission of Alleged "Original" Promissory Note (ECF No. 29); Defendant's Request for Judicial Notice (ECF No. 30); Defendant Margaret Gauthier's Motion to Strike and Objection to Admission of Alleged "Original" Promissory Note (ECF No. 39); Defendant Margaret Gauthier's Motion to Compel Production of the Original Note (ECF No. 40); Objection to Court's Order Deeming the Order to Clarify Resolved (ECF No. 42); and Defendant Margaret Gauthier's Motion to Compel Discovery (ECF No. 63).   For the same reason, the Court DISMISSES Ms. Gauthier's Motion for Forensic Examination of Promissory Note and Mortgage (ECF No. 56) as premature.   The "forensic examination" she requests will happen at trial.

The Court also DISMISSES Bravo's Motion to Schedule a Status Conference for the Purpose of Presenting the Original Promissory Note and to Address any Unresolved Issues and/or Claims Pertaining to the Original Promissory Note (ECF No. 45).

The Court DISMISSES Defendant Margaret Gauthier's Motion for Sanctions Against Plaintiff and Plaintiff's Counsel (ECF No. 54).

## V.   PLAINTIFF'S MOTION TO SUBSTITUTE PARTY

### A.   The Parties' Positions

#### 1.   Bravo's Motion to Substitute Party

Bravo moves the Court to substitute as Plaintiff UMB Bank. *Pl.'s Substitute Mot.* at 1.

The Plaintiff informs the Court that after it filed its complaint on October 5, 2023, Bravo then assigned the mortgage deed to UMB Bank, by virtue of an Assignment of Mortgage dated August 13, 2024, and recorded in the York County Registry of Deeds. *Id.* at 1-2 (citing *id.*, Attach. 1, *Corp. Assignment of Mortg.* (ECF No. 36-1) (*UMB Mortg. Assignment*)).  Bravo quotes Federal Rule of Civil Procedure 25(c), which states that "if an interest is transferred, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." *Id.* at 2.  Based on the foregoing, Bravo urges the Court to grant its motion to substitute UMB Bank as Plaintiff in the instant case.

### 2.   Margaret Gauthier's Opposition

Ms. Gauthier opposes Bravo's motion to substitute.  *Def.'s Substitute Opp'n* at 1.  The crux of her objection is that "substitution would constitute fraud on the Court," *id.* at 2 (capitalization altered), because "[a] proposed substitution would be based on a chain of title that is fundamentally flawed due to the improper bifurcation of the note and mortgage, as well as the broken chain of title and lack of proper endorsements."  *Id.*  She argues that granting the motion to substitute would thus violate *Greenleaf*'s requirement that a foreclosure plaintiff prove ownership of both the note and mortgage, and the First Circuit's requirement in *Jones*, 925 F.3d 534 of strict compliance with Maine's foreclosure statute.  *Id.*

Ms. Gauthier again reasserts the Court should impose sanctions on Attorney Longoria.  *Id.* at 3-4 (citing *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989); *KeyBank Nat'l Ass'n v. Sargent*, 2000 ME 153, 758 A.2d 528, 536 (Me. 2000)).  After restating her position that "no version of the note presented thus far by the Plaintiff can be trusted as the authentic original," *see id.* at 4-5,[6] she opines that "[v]iewed together, these documents indicate a clear pattern of misrepresentation by Attorney Longoria regarding the original note" and "[h]er claim of continuous possession of the unpunched version since 2012 cannot withstand scrutiny against this contrary documentary evidence."  *Id.* at 5.

---

[6]   Ms. Gauthier cites to "**Exhibits A, B, and C**, attached hereto" in support of this proposition. *Def.'s Substitute Opp'n* at 4 (emphasis in original).  *See also id.* at 5.  However, Ms. Gauthier does not attach any exhibits to her objection to Plaintiff's motion to substitute.

The Defendant also argues that any attempt to substitute a new plaintiff at this stage would be "improper and prejudicial, as it would not cure the fatal jurisdictional and standing defects in this case." *Id.* at 3 (citing *Mot. for Pleadings J. or Dismissal*). Ms. Gauthier concludes that Rule 25 "allows substitution only in limited circumstances not present here" and "Plaintiff cannot exploit Rule 25 to circumvent the consequences of its lack of standing." *Id.* at 7.

### 3. Bravo's Reply

Bravo opines that Ms. Gauthier "continues to repeat the fallacy that if the Note and Mortgage are somehow separated (which the Plaintiff does not concede) that situation would render both unenforceable." *Pl.'s Substitute Reply* at 1. "That is simply not the law in the state of Maine," Bravo argues. *Id.* at 1 (citing *JP Morgan Chase Bank v. Harp*, 2011 ME 5, 10 A.3d 718; *Greenleaf*, 2014 ME 89, 96 A.3d 700; *Bank of N.Y. v. Dyer*, 2016 ME 10, 130 A.3d 966) (citations amended). Moreover, Bravo says the Court has already reviewed the affidavit filed concerning the original Note and found its Order to Clarify "resolved." *Id.* at 2 (citing *Longoria Aff.*; *Order on Clarify Order*).

Bravo also takes issue with the Defendant's discussion of *Sargent*, 2000 ME 153, 758 A.2d 528, arguing that Ms. Gauthier "pretends to quote the Law Court denying a motion to substitute because it would 'not be in the interest of justice'," but "[t]he baseless quote . . .. does not appear anywhere in *Sargent*." *Id.*

54

### 4.   Margaret Gauthier's Motion to Strike Plaintiff's Reply to Response to Motion, Request for Sanctions, Request for Order to Show Cause

The Defendant moves the Court to strike Bravo's reply in support of its motion to substitute, impose sanctions on Attorney Longoria, and issue an order to show cause why Attorney Longoria should not be held in contempt.  *Def.'s Mot. to Strike Pl.'s Reply, Req. for Sanctions, and Req. for Order to Show Cause* at 1.

The crux of Ms. Gauthier's concern is that Attorney Longoria filed a reply to the Defendant's opposition to the motion to substitute "purportedly on behalf of UMB Bank," *id.* at 1 (citing *Pl.'s Substitute Reply*) even though the Court had not granted the Plaintiff's motion to substitute UMB Bank as plaintiff.  *Id.* at 1-2.

Ms. Gauthier argues that "[t]his unauthorized filing prejudices the Defendant by forcing her to respond to arguments made on behalf of an entity that is not a party to this case," and "infringes on Defendant's due process rights."  *Id.* at 2.  Thus, Ms. Gauthier argues the Court should: (1) strike the reply as procedurally improper, (2) sanction Attorney Longoria, and (3) issue an order to show cause why Attorney Longoria should not be held in contempt.  *Id.* at 2-3.

### 5.   Margaret Gauthier's Objection to Plaintiff's Reply[7]

In a separate submission, Ms. Gauthier objects to Bravo's reply for similar reasons: she is concerned that Attorney Longoria filed the reply on behalf of UMB

---

[7]     Ms. Gauthier filed this surreply without first requesting, or being granted, permission from the Court.  However, "[a] document filed *pro se* is 'to be liberally construed.'"  *MacDonald v. Cumberland Cnty. Sheriff*, No. 2:22-cv-00304-JAW, 2023 U.S. Dist. LEXIS 196607, at *5-6 (D. Me. Nov. 2, 2023) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Court treats Ms. Gauthier's objection as part of the motion sequence.

Bank and is thus "improperly acting on behalf of UMB Bank before this Court has approved the substitution." *Def.'s Substitute Obj.* at 1. She characterizes Attorney Longoria's appearance as engaging in "premature representation" in violation of Federal Rule of Civil Procedure 25(c), unauthorized representation, improper representation, due process violations, attempting to circumvent standing issues, and misrepresenting Maine law. *Id.* at 1-3 (capitalization altered). She again asks the Court to issue an order to show cause as to why Attorney Longoria should not be sanctioned. Ms. Gauthier also restates the arguments from her opposition and motion to strike. *See id.* at 1-13.

### B.   Discussion

#### 1.   The Motion to Substitute

Federal Rule of Civil Procedure 25 governs the substitution of parties. FED. R. CIV. P. 25. Rule 25(c), titled "Transfer of Interest," says "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." *Id.*

Bravo moves the Court to substitute as Plaintiff UMB Bank pursuant to Rule 25(c). *Mot. to Substitute* at 1-3. Bravo informs the Court that after U.S. Bank filed its complaint on October 5, 2023, the mortgage deed was then assigned from Bravo to UMB Bank by virtue of an Assignment of Mortgage dated August 13, 2024. *Id.* at 1-2 (citing *UMB Assignment of Mortg.*). As the interest in the Mortgage has thus

been transferred, Bravo requests the Court grant its motion and substitute UMB Bank as the plaintiff in this case. *Id.* at 1-3.

Ms. Gauthier fervently objects. *See Def.'s Substitute Obj.*; *see also Def.'s Mot. to Strike Pl.'s Reply, Req. for Sanctions, and Req. for Order to Show Cause.* At base, her concern is that "substitution would be based on a chain of title that is fundamentally flawed due to the improper bifurcation of the note and mortgage, as well as the broken chain of title and lack of proper endorsements." *Def.'s Substitute Obj.* at 2.

The Court has responded to Ms. Gauthier's allegations regarding the authenticity of the Note and Mortgage before, and now states again that it has previously deemed its order to clarify resolved. *Order on Clarify Order.* The Court reminds Ms. Gauthier that the Plaintiff in this action, like any party bringing a foreclosure action, will be required to introduce the original Note and Mortgage at trial in compliance with *Greenleaf.* Ms. Gauthier's objections are moot, pre-trial, because they have been previously tentatively resolved, as well as premature, as the case has not yet reached trial.

The Court grants Bravo's motion to substitute UMB Bank as Plaintiff pursuant to Federal Rule of Civil Procedure 25(c).

### 2.   The Defendant's Other Objections

The Court now turns to Defendant's Motion to Strike Plaintiff's Reply, Request for Sanctions, and Request for Order to Show Cause (ECF No. 62) and Defendant Margaret Gauthier's Objection to Plaintiff's Reply to Objection to Motion to

Substitute (ECF No. 65). The Court dismisses both motions as unsubstantiated and predicated on a fundamental misreading of the plain language of Bravo's reply. Ms. Gauthier complains that Attorney Longoria filed a reply to the Defendant's opposition to the motion to substitute "purportedly on behalf of UMB Bank," *Mot. to Strike.* at 1 (citing *Pl.'s Substitute Reply*), when UMB was not a party to the suit. However, the premise for Mr. Gauthier's concern is incorrect. Attorney Longoria filed the reply on behalf of Bravo, not UMB Bank; nothing in the motion sequence, let alone the reply, suggests otherwise. The Court accordingly dismisses Ms. Gauthier's motion and objection.

### C.   Conclusion

The Court GRANTS Bravo's Motion for Substitute of Plaintiff (ECF No. 36) and DISMISSES Defendant's Motion to Strike Plaintiff's Reply, Request for Sanctions, and Request for Order to Show Cause (ECF No. 62) and Defendant Margaret Gauthier's Objection to Plaintiff's Reply to Objection to Motion to Substitute (ECF No. 65). Having granted the Plaintiff's motion to substitute, the Court DISMISSES as moot Plaintiff's Motion for Leave to File a Surreply to Defendant Margaret Gauthier's "Opposition" to Plaintiffs Reply to Motion to Substitute (ECF No. 70).

## VI.   DEFENDANT'S THIRD MOTION FOR JUDICIAL NOTICE

### A.   The Parties' Positions

#### 1.   Margaret Gauthier's Third Motion for Judicial Notice

On October 22, 2024, Ms. Gauthier filed a motion in light of the Maine Law Court's recent decision in *Finch v. U.S. Bank*, 2024 ME 2, 307 A.3d 1049. *Def.'s Third Judicial Notice Mot.* She reports that the *Finch* Court overturned the "one and done" rule established in *Federal National Mortgage Association v. Deschaine*, 2017 ME 190, 170 A.3d 230 and *Pushard v. Bank of America, N.A.*, 2017 ME 230, 175 A.3d 103, *Def.'s Third Judicial Notice Mot.* at 1, but asserts that "[t]he fundamental issues in this case . . . remain valid and compelling," *id.* at 2, and "[t]he *Finch* decision does not alter the fundamental requirement that a foreclosing party must have proper standing." *Id.* at 4.

#### 2.   Bravo's Response

Bravo, in its response, appears to agree with Ms. Gauthier that *Finch* does not affect the dispute in this action for foreclosure and sale. The Plaintiff notes that, after *Finch*, "[t]he foreclosure requirements that have been articulated for well over a decade remain intact." *Pl.'s Strike, Compel, Third Judicial Notice Resps.* at 3. What changed, Bravo says, is that "[t]ypographical errors in a demand letter will no longer result in debtor[]s acquiring a free house when they have not made payments for a significant period of time." *Id.* at 3-4. Bravo further opines that Ms. Gauthier "tries to merge *Finch* with her discharge in bankruptcy and argues that the result is a violation of that discharge," and notes its disagreement. *Id.* at 4.

59

### 3.    Margaret Gauthier's Reply

Ms. Gauthier's reply reiterates the arguments raised in her third request for judicial notice and additionally alleges Bravo's opposition "misapplies *Finch*" and "*Finch* simply does not excuse fundamental standing defects and does not override *Greenleaf*'s requirements for note ownership." *Def.['s] Reply to Pl.'s Omnibus Resp.* at 10.

### B.    Discussion

In a recent decision, the Maine Law Court reconsidered whether a mortgage lender is barred from pursuing a second judicial foreclosure action after a trial court dismissed the first action on the grounds that the lender's pre-foreclosure notice of right to cure failed to comply with 14 M.R.S. § 6111. *Finch*, 2024 ME 2, ¶¶ 1-3, 5, 307 A.3d 1049.  In *Finch*, the Law Court overruled *Pushard* to "align our application of section 6111 with the plain language of the statute" and "avoid the draconian windfall outcome under which a typographical error in a foreclosing lender's first and only section 6111 notice voids the note and mortgage and transfers title to the borrower." *Id.* ¶ 49.  The Law Court made clear that "we now overrule *Pushard* to the extent that it holds that the acceleration of a note balance can occur without the lender having proved that it has complied with the statutory and contractual requirements to accelerate." *Id.* ¶ 51.

The Court agrees with Ms. Gauthier and Bravo that the Law Court's recent holding in *Finch* does not fundamentally alter the issues in the present case.  *See Finch*, 2024 ME 2, ¶ 78, 307 A.3d 1049 (Hjelm, J., dissenting) ("*Greenleaf*'s holding

on standing, which is the core of the decision and the reason the case is important, remains entirely intact").

However, insofar as Ms. Gauthier's motion requests the Court to rule on the issues underlying this suit, the Court notes again that it has deemed this issue resolved pre-trial.

### C. Conclusion

The Court GRANTS in part and DISMISSES in part Defendant's Motion to Take Judicial Notice of Transfers, Foreclosures and Assignments and Their Relevance to This Case (ECF No. 64). The Court grants the motion insofar as Ms. Gauthier moves the Court to take judicial notice of *Finch*. The Court denies the motion insofar as Ms. Gauthier requests the Court to rule on the issues underlying this suit which she has raised in other filings and the Court addresses elsewhere in this omnibus order.

## VII. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court dismisses Ms. Gauthier's motion for summary judgment because the Defendant failed to comply with the deadlines imposed by the Court's November 21, 2023 scheduling order. *See Scheduling Order*.

As noted, the Magistrate Judge issued a scheduling order on November 21, 2023 informing the parties that the deadline to file any notice of intent to file a motion for summary judgment and need for a pre-filing conference pursuant to Local Rule 56(h) was April 16, 2024. *Id.* at 2. Neither party objected to the scheduling order before the December 12, 2023 deadline and thus the scheduling order "constitute[s] the Court's Scheduling Order under Fed.[]R.[]Civ.[]P. 16(b)." *Id.* at 1.

In addition, neither party has filed a notice of intent to file a motion for summary judgment, as Local Rule 56(h) and the Court's scheduling order require. Despite this, Ms. Gauthier simply filed a motion for summary judgment on November 15, 2024. This filing failed to comply with the Court's scheduling order because it was not preceded by the filing of a notice of intent and because any notice of intent would have been untimely after April 16, 2024. While "[a] document filed *pro se* is 'to be liberally construed,'" *MacDonald*, 2023 U.S. Dist. LEXIS 196607, at *5-6 (citing *Erickson*, 551 U.S. at 94) (internal citations omitted) (in turn quoting *Estelle*, 429 U.S. at 106), pro se status "does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) (citing *Eagle Eye Fishing Corp. v. United States Dep't of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994)).

The Court dismisses Ms. Gauthier's motion for summary judgment because it was improperly and untimely filed. Moreover, the Defendant's motion raises similar issues of standing that have already been addressed in a previous order from this Court, and again in this omnibus order. Ms. Gauthier's motion for summary judgment is therefore plainly non-meritorious.

Finally, the omnibus order directs the Clerk's Office to schedule trial at the earliest convenience of the Court and the parties and, therefore, the recently filed motion would only serve to delay resolution of the matter. As this order makes clear, Bravo and Ms. Gauthier are entitled to and will receive their day in court.

## VIII.  CONCLUSION

The Court DISMISSES without prejudice Defendant Margaret Gauthier's [Motion] for Judgment as a Matter of Law, or Motion to Dismiss Plaintiff's Complaint (ECF No. 9).

The Court GRANTS Bravo's Motion to Appoint Receiver (ECF No. 12) and AFFIRMS the Magistrate Judge's Recommended Decision on Motion to Appoint Receiver (ECF No. 16).  The Court hereby APPOINTS Benjamin P. Campo, Jr., Esq. as receiver for the real property located at 14-16 Melvin Avenue, Old Orchard Beach, Maine 04064 with powers to determine legal occupancy status, make necessary repairs and maintenance expenditures for the overall preservation of the Property, and collect monthly rental payments from the tenants to be allocated toward expenses for maintenance, property insurance, and property taxes.

The Court DISMISSES Ms. Gauthier's Motion for Reconsideration and Objection to Court's Order Deeming the Order to Clarify Resolved (ECF No. 41).  It also DISMISSES Defendant Margaret Gauthier's Request for Judicial Notice (ECF No. 18); Defendant Margaret Gauthier's Motion to Strike and Objection to Admission of Alleged "Original" Promissory Note (ECF No. 29); Defendant's Request for Judicial Notice (ECF No. 30); Defendant Margaret Gauthier's Motion to Strike and Objection to Admission of Alleged "Original" Promissory Note (ECF No. 39); Defendant Margaret Gauthier's Motion to Compel Production of the Original Note (ECF No. 40); Objection to Court's Order Deeming the Order to Clarify Resolved (ECF No. 42); and Defendant Margaret Gauthier's Motion to Compel Discovery (ECF No. 63).  For the same reason, the Court DISMISSES Ms. Gauthier's Motion for Forensic Examination

of Promissory Note and Mortgage (ECF No. 56) as premature.  The "forensic examination" she requests will happen at trial.  Accordingly, Bravo's Motion to Strike is also DISMISSED (ECF No. 71)

The Court also DISMISSES Bravo's Motion to Schedule a Status Conference for the Purpose of Presenting the Original Promissory Note and to Address any Unresolved Issues and/or Claims Pertaining to the Original Promissory Note (ECF No. 45).  The Court appreciates Bravo's desire to address Ms. Gauthier's concerns regarding the promissory note but concludes that this matter will be addressed in full at the upcoming trial.

The Court DISMISSES Defendant Margaret Gauthier's Motion for Sanctions Against Plaintiff and Plaintiff's Counsel (ECF No. 54).

The Court GRANTS Bravo's Motion for Substitute of Plaintiff (ECF No. 36) and DISMISSES Defendant's Motion to Strike Plaintiff's Reply, Request for Sanctions, and Request for Order to Show Cause (ECF No. 62) and Defendant Margaret Gauthier's Objection to Plaintiff's Reply to Objection to Motion to Substitute (ECF No. 65).  The Court also DISMISSES as moot Plaintiff's Motion for Leave to File a Surreply to Defendant Margaret Gauthier's "Opposition" to Plaintiff's Reply to Motion to Substitute (ECF No. 70).

The Court GRANTS in part and DISMISSES in part Defendant's Motion to Take Judicial Notice of Transfers, Foreclosures and Assignments and Their Relevance to This Case (ECF No. 64).  The Court grants the motion insofar as Ms. Gauthier moves the Court to take judicial notice of *Finch* and its circumscribed

relevance to her case. The Court denies the motion insofar as Ms. Gauthier requests the Court to rule on the issues underlying this suit.

The Court DISMISSES Defendant's Motion for Summary Judgment (ECF No. 75) without prejudice.

Finally, the Court ORDERS the Clerk's Office to forthwith schedule a trial on the merits of the Plaintiff's complaint as soon as feasible at the mutual convenience of the Court and the parties. This foreclosure complaint has become too long stymied by pretrial motions, and it is essential the case move forward to resolution, putting the Plaintiff to its proof and the Defendant to her defenses before the Court.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of November, 2024