UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UMB BANK NATIONAL ASSOCIATION, *Not in Its Individual Capacity, but Solely as Legal Title Trustee for* LVS TITLE TRUST XIII, <br>           Plaintiff, <br><br> v. <br><br> MARGARET L. GAUTHIER, <br><br>           Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )   2:23-cv-00380-JAW |

### ORDER ON EMERGENCY MOTION FOR STAY OF RECEIVERSHIP ORDER AND MOTION FOR TEMPORARY RESTRAINING ORDER

The Court denies a defendant's emergency motion for stay of receivership order and temporary restraining order.

## I.    PROCEDURAL HISTORY

On October 5, 2023, U.S. Bank Trust National Association, not in its individual capacity, but solely as owner trustee of BRAVO Residential Funding Trust 2021-C (Bravo), filed a complaint against Margaret L. Gauthier seeking an *in rem* judgment of foreclosure and sale pursuant to 14 U.S.C. § 6322 against the property located at 14-16 Melvin Avenue, Old Orchard Beach, Maine 04064 (the Property).  *Compl.* (ECF No. 1).  In its complaint, Bravo alleged it is the holder of the promissory note (the Note) and mortgage (the Mortgage) to the Property, that Ms. Gauthier was in breach of the Note by failing to make payment due as of April 1, 2022, and that the total debt owed under the Mortgage amounted to $568,597.48.  *Id.* at ¶¶ 41, 43; Prayer for Relief, § C.

On March 25, 2024, Bravo moved to appoint Benjamin P. Campo, Jr., Esq. as receiver for the Property. *Mot. to Appoint Receiver* (ECF No. 12). Ms. Gauthier opposed this motion on April 3, 2024. *Def. Margaret Gauthier's Mem. in Opp'n to Pl.'s Mot. for Appointment of Receiver* (ECF No. 13). Bravo replied on April 9, 2024. *Reply to Opp'n to Mot. to Appoint Receiver* (ECF No. 14).

On May 3, 2024, the Magistrate Judge filed her recommended decision with the Court, which concluded that the appointment of receiver was warranted. *Recommended Decision on Mot. to Appoint Receiver* (ECF No. 16) (*Recommended Decision*). Ms. Gauthier filed an objection to the Recommended Decision on May 17, 2024. *Def. Margaret Gauthier's Objs. to Mag.'s R. & R. to Appoint Receiver* (ECF No. 17) (*Def.'s Recommended Decision Obj.*); *see also Additional Attachs.* (ECF No. 20). Bravo responded to Ms. Gauthier's objection on May 31, 2024. *Resp. to Obj. by Def. Margaret Gauthier* (ECF No. 19) (*Pl.'s Recommended Decision Resp.*). Ms. Gauthier replied on June 3, 2024. *Def. Margaret Gauthier's Reply to Pl.'s Resp. to Def.'s Objs. to Mag.'s Recommendations* (ECF No. 21) (*Def.'s Recommended Decision Reply*).

On November 19, 2024, the Court issued an omnibus order responding to the many pending motions in this case. *Omnibus Order* (ECF No. 78). As part of the omnibus order, the Court affirmed the Magistrate Judge's Recommended Decision to grant Bravo's motion to appoint Mr. Campo as receiver for the Property. *See Mot. to Appoint Receiver*; *Recommended Decision on Mot. to Appoint Receiver*; *Omnibus Order* at 38-44, 63. The Court accordingly appointed Mr. Campo as receiver with powers to determine legal occupancy status, make necessary repairs and

2

maintenance expenditures for the overall preservation of the Property, and collect monthly rental payments from the tenants to be allocated toward expenses for maintenance, property insurance, and property taxes. *Omnibus Order* at 63.

The omnibus order also granted Bravo's motion to substitute UMB Bank, National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Title Trust XIII (UMB Bank) as plaintiff. *Id.* at 52-58, 64; *Mot. for Substitute of Pl.* (ECF No. 36).

On November 20, 2024, Ms. Gauthier filed a motion for certification of order for interlocutory appeal. *Def.'s Mot. for Certification of Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b)* (ECF No. 79).

Also on November 20, 2024, Ms. Gauthier filed an emergency motion for stay of receivership order and motion for temporary restraining order (TRO). *Emergency Mot. for Stay of Receivership Order and Mot. for Temporary Restraining Order* (ECF No. 80) (*Def.'s Emergency Mot.*). On November 21, 2024, the Court ordered the Plaintiff to respond to the emergency motion as soon as possible and informed the parties the Court will act on the motion before November 22, 2024 at 5:00pm based on the filings available at that time. *Order* (ECF No. 81). UMB Bank responded on November 22, 2024. *Pl.'s Resps. to Def.'s Emergency Mot. for Stay of Receivership Order and Mot. for Temporary Restraining Order [ECF 80]* (ECF No. 82) (*Pl.'s Emergency Opp'n*).[1]

---

[1] In ruling on the motion as quickly as possible, the Court has done its level best, but the parties should appreciate "the temporal constraints under which the district court labored." *See Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 15 (1st Cir. 2004).

3

## II. THE PARTIES' POSITIONS

### A. The Defendant's Emergency Motion for Stay of Receivership Order and TRO[2]

The Defendant seeks an emergency TRO and stay of the receivership order. *Def.'s Emergency Mot.* She asserts "[t]he receiver has given notice of intent to enter and inspect the property located at 14-16 Melvin Avenue within 48 hours, requiring immediate Court intervention before this Court can consider the certification motion." *Id.* at 2.

The Defendant argues that "TRO factors strongly favor relief." *Id.* at 3. She claims she has a likelihood of success on the merits and stands to suffer irreparable harm absent injunctive relief, and that the balance of the equities and the public interest weigh in her favor. *Id.*

Turning to her likelihood of success on the merits, Ms. Gauthier argues that "standing and jurisdiction support [a] stay." *Id.* at 4 (capitalization altered). Alluding to the arguments she has raised previously questioning the authenticity of the Note and Mortgage, Ms. Gauthier avers that questions of standing must be resolved before a court exercises its power of receivership. *Id.* at 4-5 (capitalization altered). In the

---

[2] The Court takes a moment to address the unprecedented situation it has encountered while responding to this emergency motion. In reviewing the Defendant's motion, the Court noted that it contained numerous misquotations and miscitations and, in one instance, a citation to a case that does not appear to exist. This is a grave and substantial error. On November 22, 2024, the Court issued an order for Ms. Gauthier to show cause as to why she should not be sanctioned and issued a filing restriction pursuant to *Cok v. Family Court*, 985 F.2d 32 (1st Cir. 1993) for her misleading citations. *Order to Show Cause* (ECF No. 83). The Plaintiff observed this error as well. *Pl.'s Emergency Opp'n* at 5 n.2.

The Court eliminates any reference to Ms. Gauthier's improper citations and quotations in this order on the Defendant's motion for emergency injunctive relief and stay.

instant case, she says, "[t]he standing defect . . . is particularly stark because US Bank's own corporate documents . . . explicitly disavow any authority to bring foreclosure actions." *Id.* (citing *id.*, Attach. 10, *US Bank Corp. Trust Servs. Role Documentation*). She alleges "US Bank admits it 'Does not initiate, nor has any discretion or authority in the foreclosure process' and has 'no authority to manage or otherwise take action on the loans.'" *Id.* (citing *US Bank Corp. Trust Servs. Role Documentation*).

Ms. Gauthier next turns to her risk of irreparable harm absent injunctive relief. She argues that Mr. Campo's entry "would cause immediate irreparable harm while jurisdictional issues remain unresolved," including: (1) interference with existing tenant rights and property management; (2) disruption of ongoing property operations; (3) implementation of void order if jurisdiction is ultimately found lacking; and (4) inability to undo receiver actions if appeal is granted. *Id.* at 2. She alleges further that "[t]he jurisdictional defects that warrant appeal certification also warrant staying enforcement." *Id.* at 2-3. She purports jurisdictional defects include:

> (a) Original plaintiff (US Bank) lacked authority to file and admits it cannot file foreclosures[;] (b) Substitute plaintiff (UMB Bank) is a mere title holder without authority to act[;] (c) Neither entity could have standing to seek receivership[;] [and] (d) 2020 modification proves there is a different Note holder than either original or substitute plaintiff.

*Id.* at 2-3.

Next, Ms. Gauthier argues the balance of the equities weigh in her favor and that maintaining the status quo would not cause substantial injury to any party. *Id.* at 6.

5

In conclusion, the Defendant urges the Court to grant her request for immediate stay of receivership enforcement pending consideration of the certification motion, a TRO preventing the receiver from entering the property, and a suspension of receiver powers pending jurisdictional resolution. *Id.* at 7.

### B. The Plaintiff's Opposition

UMB Bank opposes Ms. Gauthier's emergency motion. *Pl.'s Emergency Opp'n* at 1. As an initial matter, the Plaintiff argues that "[t]his Court has dealt with the baseless jurisdictional arguments repetitively made through numerous motions and other pleadings in Omnibus Order [ECF 78] entered two days ago." *Id.* UMB Bank proceeds to state that the omnibus order granted the Plaintiff's motion to appoint receiver and argues receivership "is essential to the preservation of the asset as well as the cash collateral." *Id.* The Plaintiff directs the Court to an affidavit attached by Mr. Campo outlining, among other things, that Ms. Gauthier, "despite her Discharge, has been receiving at least $4,000 per month from this investment property." *Id.* at 1-2 (citing *id.*, Attach. 1, *Benjamin P. Campo, Jr., Esq. Aff.*). UMB Bank speculates that "[t]his cash flow has incentivized a barrage of motion practice in which the Defendant engaged for years, but specifically over the past six months, for the purpose of delaying the *in rem* foreclosure of the mortgage lien." *Id.* at 2.

Turning to the merits of Ms. Gauthier's emergency motion for TRO and stay, the Plaintiff argues the Defendant cannot meet her burden for either form of relief. *Id.* The Plaintiff claims Ms. Gauthier's argument that she has a likelihood of success on the merits is incorrect and opines that Ms. Gauthier's emergency motion raises

6

the same questions of jurisdiction and standing the Court resolved in UMB Bank's favor in the omnibus order. *Id*. at 2-3.

The Defendant claims "it is UMB that will suffer irreparable harm if the Receiver is removed from his position." *Id*. at 5. It explains, "the Court's appointment of a Receiver not only cuts off the windfall of cash collateral to the discharged borrower, but it also serves to control that cash collateral and the real property through Receiver's efforts." *Id*. at 3. In addition to preserving the cash collateral, UMB Bank continues, the appointment of a receiver will help address the safety of the tenants and preserve the value of the real property asset. *Id*. "Nothing in the Defendant's Emergency Motion warrants vacating or revising the Order as she has not established why she should be entitled to continue collecting and retaining rental payments from the tenants while UMB continues to shoulder the burden of making payments for taxes and insurance." *Id*.

For similar reasons, UMB Bank avers the balance of the equities and public policy come out in its favor. *Id*. at 5. The Plaintiff states, "UMB and its predecessors-in-interest have been making payments for taxes and insurance relating to the Property," and "[t]here is no good faith basis that would justify allowing the Defendant to retain the financial benefits from the Property while requiring UMB to carry the offsetting financial burden." *Id*.

The Plaintiff concludes by urging the Court to deny Ms. Gauthier's emergency motion and to set a trial date promptly, as outlined in the omnibus order, so that this enduring lawsuit may be put to bed. *Id*. at 6.

## III. DISCUSSION

### A. Procedural Posture

The procedural posture of Ms. Gauthier's motion falls between a motion for TRO and a motion for stay. TROs allow courts to provide emergency relief on an ex parte basis and to "preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL RULES OF CIVIL PROCEDURE § 2951, at 253 (2d ed. 1995). Here, Ms. Gauthier requested the Court grant immediate stay and an emergency TRO to prevent the receiver from entering her property within 48 hours. *Def.'s Emergency Mot.* at 1.

### B. The Four-Factor Test for Preliminary Injunctive Relief

The standard for issuing a temporary restraining order is the same as for a preliminary injunction and is provided by traditional equity doctrines. *Aftermarket Auto Parts Alliance, Inc. v. Bumper2Bumper, Inc.*, Civil No. 1:12-cv-00258-NT, 2012 U.S. Dist. LEXIS 143685, *3 (D. Me. Oct. 4, 2012); 11A WRIGHT, MILLER & KANE § 2942, at 37.

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the

8

balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

### 1. Likelihood of Success on the Merits

The First Circuit has observed that likelihood of success on the merits is both the "sine qua non" and the "most important part of the preliminary injunction assessment," explaining that "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 7, 10 (1st Cir. 2012) (quoting *Jean v. Mass. State Police*, 492 F.3d 24, 27 (1st Cir. 2008); *New Comm Wireless Servs. Inc. v. Sprintcom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)). To carry her burden on this factor, the Defendant "must establish a 'strong likelihood' that [she] will ultimately prevail." *Id.* at 10 (quoting *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)).

The Defendant's primary argument is that that are unresolved standing and jurisdictional issues on which she believes she will likely succeed. *Def.'s Mot.* at 4-5. On this point, the Court directs Ms. Gauthier to its omnibus order, a sixty-five-page document responding to the nearly twenty pending motions in this case, which the

9

Court issued the day before Ms. Gauthier filed her motion for stay and emergency injunctive relief. *Omnibus Order*. As the Plaintiff correctly points out, the omnibus order considered Ms. Gauthier's arguments that Bravo, the Plaintiff in this case before the omnibus order granted Bravo's motion to substitute as plaintiff UMB Bank, *see id.* at 64, lacked standing to seek judgment of foreclosure and sale against the Property. *Id.* at 1-65. As the omnibus order discussed, Ms. Gauthier's argument was based on her allegation that Bravo has not complied with the Maine Law Court's holding in *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, ¶ 12, 69 A.3d 411, requiring a plaintiff seeking to foreclose on a mortgage to demonstrate a legal interest in both the note and the mortgage. *Omnibus Order* at 1-65. In the omnibus order, the Court stated:

> The Court has responded to Ms. Gauthier's allegations regarding the authenticity of the Note and Mortgage before, and now states again that it has previously deemed its order to clarify resolved. *Order on Clarify Order*. The Court reminds Ms. Gauthier that the Plaintiff in this action, like any party bringing a foreclosure action, will be required to introduce the original Note and Mortgage at trial in compliance with *Greenleaf*. Ms. Gauthier's objections are moot, pre-trial, because they have been previously tentatively resolved, as well as premature, as the case has not yet reached trial.

*Id.* at 57 (internally citing *Order* (ECF No. 37)).

The Court does not come to a different conclusion on the question of Bravo's standing or its own jurisdiction to preside over the present case. The only new argument the Court discerns in Ms. Gauthier's emergency motion for TRO and stay is her discussion of an informational brochure, published by U.S. Bank Global Corporate Trust Services on the role of the corporate trustee and which she attached

to her emergency motion. *US Bank Corp. Trust Servs. Role Documentation*. In her motion, the Defendant directs the Court to "US Bank's own corporate documents," which she claims "explicitly disavow any authority to bring foreclosure actions" and in which "US Bank admits it 'Does not initiate, nor has any discretion or authority in the foreclosure process' and has 'no authority to manage or otherwise take action on the loans.'" *Def.'s Emergency Mot.* at 5 (citing *US Bank Corp. Trust Servs. Role Documentation*). UMB Bank observes that this exhibit "appears to be a promotional flyer without foundation apparently produced by an entity that has never been involved in this litigation (specifically, US Bank N.A. is not the same entity as U.S. Bank Trust N.A.) and is therefore irrelevant." *Pl.'s Emergency Opp'n* at 4. This is correct. Moreover, Ms. Gauthier's arguments regarding Bravo's lack of standing are moot per the Court's omnibus order on November 19, 2024 granting Bravo's motion to substitute UMB Bank as plaintiff. *Omnibus Order* at 52-58, 64; *Mot. for Substitution of Pl.*

The Court concludes that the Defendant has not carried her burden to convince the Court of the "strong likelihood" of her success on the merits. *Fortuño*, 699 F.3d at 10.

### 2. Likelihood of Irreparable Harm

Plaintiffs seeking preliminary injunctive relief must demonstrate "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]rreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'" *Ross-*

11

*Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000) (*Ross-Simons II*) (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) (*Ross-Simons I*)).  "[D]istrict courts have broad discretion to evaluate the irreparability of alleged harm." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2001) (quoting *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989)).

The record contains little indication of any specific irreparable harm that is likely to result if the Court denies the motion for a TRO and stay.  Ms. Gauthier argues that Mr. Campo's "[e]ntry would cause immediate irreparable harm while jurisdictional issues remain unresolved," including: (1) interference with existing tenant rights and property management; (2) disruption of ongoing property operations; (3) implementation of void order if jurisdiction is ultimately found lacking; and (4) inability to undo receiver actions if appeal is granted.  *Def.'s Emergency Mot.* at 2.

The Court does not see any irreparable harm that could be occasioned by the appointment of a receiver.  The Court's order appointing Mr. Campo as receiver granted him powers to determine legal occupancy status, make necessary repairs and maintenance expenditures for the overall preservation of the Property, and collect monthly rental payments from the tenants to be allocated toward expenses for maintenance, property insurance, and property taxes.  *Omnibus Order* at 63.

The Court has a hard time seeing how Mr. Campo's authority as receiver could cause irreparable damage not redressable through monetary damages.  It cannot

imagine how the receiver's repair and maintenance of the Property would harm the Property or Ms. Gauthier as the property owner, much less that any harm that may be caused could not be addressed through a claim for monetary relief. The factor does not weigh in Ms. Gauthier's favor.

### 3. Balance of the Equities

To obtain preliminary injunctive relief, a Plaintiff must also show "the balance of equities tips in [her] favor." *Winter*, 555 U.S. at 20. This involves weighing "the balance of relevant hardships as between the parties." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 482 (1st Cir. 2009). On this factor, Ms. Gauthier argues that "[a] brief delay maintains the status quo," *Def.'s Emergency Mot.* at 6 (citing *Nken v. Holder*, 556 U.S. 418, 429 (2009)), and causes no substantial injury. *Id.* The Court has already discussed the equities as they concern Ms. Gauthier's interests. However, the Plaintiff has a significant stake in the outcome of this controversy as well. Bravo, and now UMB Bank, have a significant interest in protecting their interest in the Property by having Mr. Campo as receiver to assess the status of the property, determine its occupancy status, make necessary repairs and maintenance, and collect rents. *Pl.'s Emergency Opp'n* at 3, 5-6. The issuance of a stay would substantially injure UMB Bank because, according to the Plaintiff, the Defendant has not only failed to pay her mortgage but has also not paid insurance or taxes or assumed responsibility for maintaining the premises. *Id.* at 1-2. The Plaintiff argues that this has left it to shoulder these costs, all while Ms. Gauthier is allegedly receiving at least $4,000 per month in rent payments. *Id.*

13

The Court concludes that UMB Bank has the better argument and Ms. Gauthier has not shown that the balance of equities leans in her favor.

### 4. The Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Ms. Gauthier does not address the public interest in her TRO and stay motion. However, the Court concludes that the public's interest would be enhanced by a speedy trial, a resolution of this complicated case, and rights of appeal of the losing party as contemplated by the omnibus order.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The Court concludes that Ms. Gauthier has not met her burden to establish she is entitled to emergency TRO or stay.

The Court also reminds the Defendant that its omnibus order directed the Clerk's Office to forthwith schedule a trial on the merits of the Plaintiff's complaint as soon as feasible at the mutual convenience of the Court and the parties. *Omnibus Order* at 65. On November 22, 2024, the Clerk's Office placed this case on the February 2025 trial list. *Notice* (ECF No. 84). The Court reassures Ms. Gauthier that she and UMB Bank will receive their day in court.

## IV. CONCLUSION

The Court DENIES the Defendant's Emergency Motion for Stay of Receivership Order and Motion for Temporary Restraining Order (ECF No. 80).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of November, 2024