UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UMB BANK NATIONAL ASSOCIATION, *Not in Its Individual Capacity, but Solely as Legal Title Trustee for* LVS TITLE TRUST XIII,         Plaintiff, <br><br> v. <br><br> MARGARET L. GAUTHIER, <br><br>        Defendant. | ) ) ) ) ) ) ) ) 2:23-cv-00380-JAW ) ) ) ) ) |

**ORDER ON DEFENDANT'S AMENDED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND STAY OF RECEIVERSHIP ORDER**

On November 20, 2024, Margaret L. Gauthier filed an emergency motion for stay of receivership order and motion for temporary restraining order (TRO). *Emergency Mot. for Stay of Receivership Order and Mot. for TRO* (ECF No. 80) (*Def.'s First Emergency Mot.*). On November 21, 2024, the Court ordered UMB Bank, National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Title Trust XIII (UMB Bank), to respond to the emergency motion as soon as possible and informed the parties the Court would act on the motion before November 22, 2024 at 5:00 p.m. based on the filings available at that time. *Order* (ECF No. 81). UMB Bank responded in opposition on November 22, 2024. *Pl.'s Resps. to Def.'s Emergency Mot. for Stay of Receivership Order and Mot. for TRO [ECF 80]* (ECF No. 82) (*Pl.'s First Emergency Opp'n*). On November 22, 2024, the Court issued an order denying the Defendant's emergency motion without prejudice. *Order on Emergency*

*Mot. for Stay of Receivership Order and Mot. for Temporary Restraining Order* (ECF No. 85) (*Order on Def.'s First Emergency Mot.*).

In reviewing Ms. Gauthier's emergency motion, the Court noticed the motion contained numerous and egregious misquotations and miscitations. *Order to Show Cause* at 3-6 (ECF No. 83). The errors did not appear to be typographical, and the Court suspected they may owe to the Defendant's reliance on Artificial Intelligence software in drafting her motions. *Id.* at 7-8. Upon further review, the Court found this was not the first time Ms. Gauthier included miscitations in her submissions. *Id.* at 6-7. On November 22, 2024, the Court ordered Ms. Gauthier to show cause within seven days as to why she should not be subject to sanctions and a *Cok* filing restriction for these alarming miscitations. *Id.* at 8-10.

On November 24, 2024, Ms. Gauthier submitted an amended emergency motion for TRO and stay, which she avers "corrects the errors in Defendant's original submission, ensures that all cited authorities are verified, and demonstrates the necessity of granting the requested relief." *Def.'s Am. Emergency Mot. for TRO and Stay of Receivership Order* (ECF No. 87) (*Def.'s Am. Emergency Mot.*). The amended emergency motion "renew[s] [the Defendant's] request for a temporary restraining order based on new and verified arguments." *Id.* at 1.

As the Court explained in its order denying Ms. Gauthier's first emergency motion for TRO and stay, "[a] preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV*

2

*Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

The Court denied Ms. Gauthier's first emergency motion upon concluding that the Defendant had not met her burden to show any of these four factors weighed in her favor. *Order on Def.'s First Emergency Mot.* at 8-14. On the question of Ms. Gauthier's likelihood of success on the merits, the Court directed the Defendant to its sixty-five-page omnibus order, issued on November 19, 2024. *Omnibus Order* (ECF No. 78). In her first emergency motion, Ms. Gauthier had proffered her likelihood of success on the merits based on alleged jurisdictional and standing defects. *Def.'s First Emergency Mot.* at 4-5. The Court concluded in its order on Ms. Gauthier's first emergency motion that it had already addressed these legal claims in its omnibus order and that this factor did not weigh in the Defendant's favor. *Order on Def.'s First Emergency Mot.* at 9-11. The Court also concluded Ms. Gauthier had not shown she stood to suffer irreparable harm from the receivership order, noting "[t]he record

3

contains little indication of any specific irreparable harm that is likely to result if the Court denies the motion for a TRO and stay" and "[t]he Court has a hard time seeing how Mr. Campo's authority as receiver could cause irreparable damage not redressable through money damages." *Id*. at 12. Finally, the Court determined the balance of the equities and the public interest, the latter not addressed by Ms. Gauthier in her first emergency motion, did not cut in the Defendant's favor. *Id*. at 13-14.

The Court comes to the same conclusion in response to the Defendant's amended emergency motion for TRO and stay. First, the Court again concludes the Defendant has not shown her likelihood of success on the merits. In her amended motion, the Defendant avers "there is insufficient evidence that the Plaintiff holds the necessary legal interest to appoint a receiver and take control of Defendant's property." *Def.'s Am. Emergency Mot*. at 3 (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)). The Court has addressed Ms. Gauthier's arguments regarding standing multiple times, concluding the Plaintiff has complied with its pretrial obligations pursuant to *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700. *See, generally, Omnibus Order*; *Order on Def.'s First Emergency Mot*. at 8-11. Ms. Gauthier's newly cited case, *Steel Co. v. Citizens for a Better Environment*, does not address or allude to receivership appointments and thus fails to provide a cognizable basis for the Court to change its conclusion in its order on the current motion.

More to the point, Ms. Gauthier seems stuck on her view that because she believes UMB does not have ownership of both the Note and Mortgage for the loan in this case, UMB does not have standing, and this Court is without jurisdiction pursuant to *Greenleaf*. Thus, Ms. Gauthier insists that the Court should dismiss the foreclosure complaint for lack of jurisdiction, and for support she cites *Steel Co.*'s admonition that a court should not entertain "hypothetical jurisdiction" because "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment." 523 U.S. at 101.

The problem with Ms. Gauthier's often repeated argument is that UMB contends that it has ownership and possession of the Note and Mortgage in this case, and when Ms. Gauthier raised the question, Attorney Longoria filed affidavits to confirm that UMB possesses both the Note and the Mortgage. *Aff. of Note Holder* (ECF No. 27); *Aff. in Resp. to Order to Clarify* (ECF No. 35). Based on these affidavits, there is sufficient evidence before the Court so that it is well satisfied it has not assumed "hypothetical jurisdiction." *Steel Co.*, 523 U.S. at 101.

As the Court has previously explained to Ms. Gauthier, UMB's affidavits carry the day for the moment, and the Court will not dismiss the case on her say-so. However, UMB still has the obligation to demonstrate that it has the ownership interest in both the promissory Note and Mortgage in order to prevail at trial. *Greenleaf*, 2014 ME 89, ¶ 9 ("Because foreclosure regards two documents—a promissory note and a mortgage securing that note—standing to foreclose involves the plaintiff's interest in both the note and the mortgage"). To resolve this issue, the

5

Court has directed the Clerk of Court to schedule a trial and the docket states that "[t]he matter will be placed on the February 2025 trial list. Ready for trial on 2/3/2025." *Notice* (ECF No. 84). At trial, UMB will be put to its proof, and if it fails to bear its burden of proof under *Greenleaf*, its foreclosure will fail. But in view of Attorney Longoria's affidavits, the Court's assertion of jurisdiction based on the current evidence is not the assertion of hypothetical jurisdiction. To the contrary, the Court's refusal to accept continued jurisdiction would be to assume (contrary to the current evidence) a hypothetical *lack* of jurisdiction. Once again, these issues will be resolved at trial.

Turning to the risk of irreparable harm, the Court again comes to the same conclusion as in its order on Ms. Gauthier's first emergency motion. In her amended emergency motion, the Defendant asserts she stands to suffer irreparable harm because "[t]he receivership causes the following unnecessary and negative impacts": loss of control over property, tenant disruption, and reputational damage. *Def.'s Am. Emergency Mot.* at 5-6. She claims "[c]ourts routinely recognize that the deprivation of property rights constitutes irreparable harm because monetary damages cannot adequately compensate for such losses." *Id.* at 5 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

This citation is inapposite because the passage in *Elrod* that Ms. Gauthier cites limits its holding to the risk of irreparable harm stemming specifically from a violation of First Amendment rights. *Elrod*, 427 U.S. at 373 ("The Court of Appeals held . . . 'Inasmuch as this case involves First Amendment rights of association which

6

must be carefully guarded against infringement by public office holders, we judge that injunctive relief is clearly appropriate in these cases.' . . .. We agree."). Based on a facially different context and underlying claim, the Court does not believe *Elrod* is relevant or persuasive to Ms. Gauthier's case.

In her amended emergency motion, Ms. Gauthier argues the balance of the equities favors the issuance of a TRO and stay. *Def.'s Am. Emergency Mot.* at 6. She cites *SEC v. American Board of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987), for the assertion that "[c]ourts have recognized the importance of issuing TROs to stay receiverships where jurisdictional and procedural issues remain unresolved" and states, in that case, "the court highlighted the need for strict scrutiny of receiverships to prevent unwarranted interference with property." *Def.'s Am. Emergency Mot.* at 6. Ms. Gauthier's characterization of the law is incorrect. The Second Circuit, which does not bind this Court, observed "courts have consistently held that such power [to appoint trustees or receivers] exists . . . where necessary to prevent the dissipation of a defendant's assets pending further action by the court." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d at 436. The Second Circuit additionally held that "[a]lthough we have warned that 'the appointment of trustees [or receivers] should not follow requests by the SEC as a matter of course,' . . . a district court's decision to appoint a trustee or receiver may be disturbed on appeal only if the district court has abused its discretion." *Id.* (alteration in original). Simply put, this case does not stand for the propositions Ms. Gauthier claims. Furthermore, for the same reasons the Court discussed in its order on the Defendant's first emergency motion, *see Order on Def.'s*

7

*First Emergency Mot.* at 13-14, the Court concludes Ms. Gauthier has not met her burden to establish the balance of the equities tilts in her favor.

Finally, the Court concludes the public interest does not favor a TRO or stay. Ms. Gauthier did not address the public interest in her first emergency motion but raises new arguments in her amended emergency motion. In her amended motion, the Defendant argues "[t]he public interest is best served by ensuring the fair and lawful resolution of disputes." *Def.'s Am. Emergency Mot.* at 7. She proceeds to cite *Nken v. Holder*, 556 U.S. 418, 429 (2009), for the proposition that "the Supreme Court has recognized that preserving the status quo is an important consideration in granting relief pending resolution of the merits" and in support of her argument that "[g]ranting the TRO would maintain the current state of affairs, preventing further harm to Defendant's property rights and tenant relationships while the Court considers the underlying jurisdictional issues." *Id.*

The Court finds this an unhelpful interpretation of *Nken*. In that case, the Supreme Court differentiated a stay from injunctive relief and held "[a] stay 'simply suspend[s] judicial alteration of the status quo,' while injunctive relief 'grants judicial intervention,'" *Nken*, 556 U.S. at 429 (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986)), and "[b]y seeking an injunction, applicants request that I issue an order *altering* the legal status quo," *id.* (quoting *Turner Broad. Sys., Inc. v. FCC*, 507 U.S. 1301, 1302 (1993) (emphasis in original)). In support of her argument that the public interest tilts in her favor, Ms. Gauthier additionally misquotes *United States Catholic Conference v. Abortion Rights Mobilization*, 487

8

U.S. 72, 76 (1988); the language Ms. Gauthier includes in quotation marks that "[f]ederal courts have 'the inherent and legitimate authority . . . to issue process only in aid of [their] jurisdiction,'" *Def.'s Am. Emergency Mot.* at 7, does not appear in the Supreme Court's decision.

The Court DENIES the Defendant's Amended Emergency Motion for Temporary Restraining Order and Stay of Receivership Order (ECF No. 87).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of November, 2024